*272 OPINION OF THE COURT
Titone, J.
In a prior action brought to recover damages for alleged medical malpractice, plaintiff was nonsuited for failure properly to serve the defendant doctor before the Statute of Limitations on her claim expired. The threshold issue in this second malpractice action, which was brought by plaintiff against the lawyers she retained to prosecute the first, is whether an attorney may be held vicariously liable to his or her client for the negligence of a process server whom the attorney has hired on behalf of that client.
According to the allegations in the present complaint, plaintiff, a victim of alleged medical malpractice, had originally retained defendant and his law firm to pursue her claim against Dr. Neils Lauersen. With only five days remaining before the Statute of Limitations on the claim would expire, defendant promptly prepared a summons and complaint. On November 5, 1978, two days before the Statute of Limitations was to run, defendant delivered the prepared documents to Fischer’s Service Bureau, a process service agency regularly used by defendant’s law firm, with the instruction that process was to be served "immediately.” It is undisputed that Fischer’s, not defendant, selected the licensed process server who would actually deliver the papers and that Fischer’s and the process server, rather than defendant, determined the precise manner of effecting service.
Although the process server used by Fischer’s apparently delivered the papers on time, plaintiff’s medical malpractice claim was ultimately dismissed when a traverse hearing revealed that the process server had given the papers to Dr. Lauersen’s secretary rather than Dr. Lauersen himself. By the time the traverse hearing was held, the Statute of Limitations had expired and plaintiff had no further legal recourse against the allegedly negligent doctor. Defendants then attempted to recover on plaintiff’s behalf by "alleging various and different theories of liability against certain other parties.” (Plaintiff’s verified complaint fl 11.) These claims, however, were all resolved against plaintiff in January of 1987.
Plaintiff subsequently commenced the present legal malpractice action against defendant and his law firm, claiming that they should be held liable for the negligence of the process server who had been retained to serve Dr. Lauersen on plaintiff’s behalf. Defendants moved for summary judgment *273 and plaintiff cross-moved. Plaintiff argued that defendants’ liability could be predicated on a nondelegable duty of attorneys to exercise care in assuring proper service of their clients’ legal process. Alternatively, plaintiff argued that the process server was defendants’ agent and that, under settled agency law principles, they could therefore be held accountable for the process server’s wrongful acts. Finally, plaintiff contended that defendants should be held liable because of their own negligence in selecting a process serving agency that was "not a particularly respected or reliable entity,” in failing to supervise or monitor the work of that agency and, finally, in neglecting to file the summons and complaint with the appropriate County Clerk so as to obtain a 60-day toll of the Statute of Limitations on plaintiff’s claim pursuant to CPLR 203 (b) (5).
The trial court rejected all of plaintiff’s arguments. Relying on Bockian v Esanu Katsky Korins & Siger (124 Misc 2d 607) and Ostrander v Holm’s Vil. Travel (87 Misc 2d 1049), the court concluded that a process server is an "independent contractor” rather than an agent of the employing attorney, since "[t]he attorney does not have control over the manner in which the task is performed.” (148 Misc 2d 853, 855.) Accordingly, the court held, the relationship between the process server and the attorney here did not provide a cognizable basis for holding the latter vicariously liable for the acts of the former. On reargument, the court also rejected plaintiff’s claims regarding defendants’ failure to supervise the process server, holding that defendants’ duty was satisfied when they took the necessary steps to commence the action by retaining the services of a licensed process server.
On plaintiff’s appeal, a divided Appellate Division affirmed for essentially the same reasons. We now modify by denying defendants’ motion for summary judgment. As plaintiff’s attorneys, defendants had a nondelegable duty to her and, accordingly, they cannot evade legal responsibility for the negligent performance of that duty by assigning the task of serving process to an "independent contractor.”
The general rule is that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor’s negligent acts (see, Rosenberg v Equitable Life Assur. Socy., 79 NY2d 663, 668; Gravelle v Norman, 75 NY2d 779, 782; Besner v Central Trust Co., 230 NY 357, 362; Prosser and Keeton, Torts § 71 *274 [5th ed]; see also, Restatement [Second] of Torts § 409 [1965]). Although several justifications have been offered in support of this rule, the most commonly accepted rationale is based on the premise that one who employs an independent contractor has no right to control the manner in which the work is to be done and, thus, the risk of loss is more sensibly placed on the contractor (Feliberty v Damon, 72 NY2d 112, 118; Prosser and Keeton, op. cit., at 509).
Despite the courts’ frequent recitation of the general rule against vicarious liability, the common law has produced a wide variety of so-called "exceptions” (see, Feliberty v Damon, supra, at 118; Restatement, op. cit., §§ 410-429). Indeed, it has been observed that the general rule "is now primarily important as a preamble to the catalog of its exceptions” (Pacific Fire Ins. Co. v Kenny Boiler & Mfg. Co., 201 Minn 500, 503, 277 NW 226, 228; accord, La Count v Hensel Phelps Constr. Co., 79 Cal App 3d 754, 145 Cal Rptr 244 [general rule of nonliability applies only where no good reason can be found for departing from it]; Restatement, op. cit., § 409, comment b, at 370 [same]). These exceptions, most of which are derived from various public policy concerns (see, Feliberty v Damon, supra, at 118), fall roughly into three basic categories: negligence of the employer in selecting, instructing or supervising the contractor;[1] employment for work that is especially or "inherently” dangerous (see, Wright v Tudor City Twelfth Unit, 276 NY 303, 307; see also, Rosenberg v Equitable Life Assur. Socy., supra); and, finally, instances in which the employer is under a specific nondelegable duty (see generally, Restatement, op. cit., § 409, comment b, at 371).[2]
The exception that concerns us here — the exception for nondelegable duties — has been defined as one that "requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted” (Restatement, op. cit, ch 15, topic 2, Introductory Note, at 394, quoted in Feliberty v Damon, supra, at 118-119). The exception is often invoked where the particular duty in question is one *275 that is imposed by regulation or statute (e.g., Gravelle v Norman, supra; Allen v Cloutier Constr. Corp., 44 NY2d 290, 300). However, the class of duties considered "nondelegable” is not limited to statutorily imposed duties. To the contrary, examples of nondelegable common-law duties abound (e.g., Storrs v City of Utica, 17 NY 104; see generally, Prosser and Keeton, op. cit., at 511-512, and nn 26-41).
There are no clearly defined criteria for identifying duties that are nondelegable. Indeed, whether a particular duty is properly categorized as "nondelegable” necessarily entails a sui generis inquiry, since the conclusion ultimately rests on policy considerations (Feliberty v Damon, supra, at 119).
The most often cited formulation is that a duty will be deemed nondelegable when " 'the responsibility is so important to the community that the employer should not be permitted to transfer it to another’ ” (id., at 119, quoting Prosser and Keeton, op. cit., at 512). This flexible formula recognizes that the "privilege to farm out [work] has its limits” and that those limits are best defined by reference to the gravity of the public policies that are implicated (5 Harper, James and Gray, Torts § 26.11, at 73 [2d ed]; see also, id., at 76-77).
Viewed in the light of these principles, the duty at issue here — that owed by an attorney to his or her client to exercise care in the service of process — fits squarely and neatly within the category of obligations that the law regards as "nondelegable.” Manifestly, when an individual retains an attorney to commence an action, timely and accurate service of process is an integral part of the task that the attorney undertakes (see, 5 Harper, James and Gray, op. cit., at 76-77; cf, Feliberty v Damon, supra, at 120). Furthermore, proper service of process is a particularly critical component of a lawyer’s over-all responsibility for commencing a client’s lawsuit, since a mistake or oversight in this area can deprive the client of his or her day in court regardless of how meritorious the client’s claim may be. Given the central importance of this duty, our State’s attorneys cannot be allowed to evade responsibility for its careful performance by the simple expedient of "farming out” the task to independent contractors.
The existence of an extensive and comprehensive Code of Professional Responsibility that governs the obligations of attorneys to their clients reinforces our conclusion. Under the Code, a lawyer may not "seek, by contract or other means, to *276 limit prospectively the lawyer’s individual liability to a client for malpractice” (DR 6-102, 22 NYCRR 1200.31). Moreover, the Code forbids lawyers from "[n]eglect[ing] legal matter[s] entrusted to [them]” (DR 6-101 [A] [3], 22 NYCRR 1200.30 [a] [3]), enjoins them to assist in "securing] and protecting] available legal rights” (EC 7-1) and requires them to represent their clients as zealously as the "bounds of the law” permit (Canon 7). All of the latter ethical and disciplinary considerations are implicated when a client’s lawsuit is undermined — or even defeated — as a consequence of carelessness in the service of process.
Our conclusion is also supported by the perceptions of the lay public and the average client, who may reasonably assume that all of the tasks associated with the commencement of an action, including its formal initiation through service of process, will be performed either by the attorney or someone acting under the attorney’s direction. While it may be a common practice among attorneys to retain outside agencies like Fischer’s to assist them in effecting service, that custom is not necessarily one of which the general public is aware. Even where a client is expressly made aware that a process serving agency will be retained, it is unlikely that the client will understand or appreciate that the process serving agency’s legal status as an "independent contractor” could render the retained attorney immune from liability for the agency’s negligence. Under established principles, the client’s reasonable expectations and beliefs about who will render a particular service are a significant factor in identifying duties that should be deemed to be "nondelegable” (see, Restatement, op. cit., § 429; see also, Feliberty v Damon, supra, at 120).
Finally, we conclude that permitting lawyers to transfer their duty of care to process servers would be contrary to sound public policy. In this State, licensed attorneys have been granted an exclusive franchise to practice law, with the understanding that they have both the specialized knowledge and the character required to represent clients in a competent, diligent and careful manner. Under this system, lawyers are authorized to hold themselves out as being uniquely qualified to manage their clients’ legal affairs, a task that unquestionably includes the commencement of lawsuits. While it is true that the State also licenses nonlawyers to perform certain discrete, law-related tasks such as service of process (see, General Business Law art 8), the existence of that licensing system certainly does not evince a governmental intent to *277 relieve attorneys of the responsibilities implicit in their franchise. To the contrary, the purpose of the licensing system for process servers is to "combat a continuing and pervasive problem of unscrupulous service practices” in order to protect defendants who might otherwise be deprived of their day in court or be victimized by "fraudulent default judgments” (Matter of Barr v Department of Consumer Affairs, 70 NY2d 821, 822; accord, Givens, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 8, at 128-130). That purpose is obviously unrelated to the entirely separate goal of assuring clients who are would-be plaintiffs that their process will be timely served in a manner that complies with the complex requirements of CPLR articles 2 and 3, as well as with the numerous other statutory provisions relating to commencement of actions (see, e.g., Business Corporation Law §§ 304-308) and the formidable body of case law illuminating those statutes. The responsibility for achieving that goal — and the liability for negligent failures to achieve it —must remain squarely on the shoulders of trained and licensed attorneys who, as members of a "learned profession,” alone have the necessary knowledge and experience to protect their clients’ rights (cf, Feliberty v Damon, supra, at 120 [refusing to impose nondelegable duty to provide competent defense on insurers, because "insurer necessarily must rely on independent counsel to conduct the litigation” and is, in fact, barred from interfering with independent counsel’s "professional judgment”]).
Before closing, we note that, contrary to the concurrer’s suggestion that our ruling has a far broader application, the nondelegable duty of care that we have recognized in this case is limited to the discrete and unique function of commencing an action through service of process. Furthermore, the duty extends only to clients who have retained an attorney for the purpose of commencing a lawsuit. We do not decide here the entirely separate question of an attorney’s liability for the wrongs that a retained process server may commit against a potential defendant or another third party (see, e.g., Balzano v Lublin, 162 AD2d 252; Bockian v Esanu Katsky Korins & Siger, 124 Misc 2d 607, supra; see also, Kersten v Van Grack, Axelson & Williamowsky, 92 Md App 466, 608 A2d 1270). Nor do we consider the right of an attorney who has been held liable for the negligence of a retained process server to pursue whatever contractual or tort remedies that the attorney may have against that process server. We hold only that an attor *278 ney has a nondelegable duty to his or her clients to exercise due care in the service of process and that, accordingly, an attorney may be held liable to the client for negligent service of process, even though the task may have been "farmed out” to an independent contractor.[3]
In view of this conclusion, it is evident that the courts below erred in granting defendants’ motion for summary judgment dismissing the complaint. If there was negligence in the effort to effect service of process in plaintiff’s failed action against Dr. Lauersen, plaintiff is entitled to hold defendant vicariously liable, and she may recover in damages if she can demonstrate that this negligence was the proximate cause of any pecuniary injury she sustained. We note, however, that plaintiff is not herself entitled to summary judgment on the liability question at this point in the litigation, since she still must demonstrate both that the retained process server acted negligently and that she would have prevailed in the underlying action against Lauersen if the negligence had not occurred (see, e.g., Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine, 45 NY2d 730). Thus, the denial of plaintiff’s cross motion for partial summary judgment was proper. Finally, since we are holding that neither party is entitled to summary judgment on plaintiff’s single cause of action for legal malpractice, we need not now consider the viability of the other theories that plaintiff has advanced to support defendants’ liability.[4] At this point in the litigation, it suffices to hold that defendants’ nondelegable duty to plaintiff provides a legally viable basis for imposing liability on them.
Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, by denying defendants’ motion *279 for summary judgment dismissing the complaint and, as modified, affirmed.

. Notably, although often classified as an "exception,” this category may not be a true exception to the general rule, since it concerns the employer’s liability for its own acts or omissions rather than its vicarious liability for the acts and omissions of the contractor.

. A fourth category — i.e., cases in which the employer is held liable for risks "inherent in the work itself’ — has been identified by one noted commentator (Prosser and Keeton, op. cit., at 515-516).

. Contrary to the concurrer’s concern about the practical implications of our holding, we find nothing untoward or "unrealistic” about a rule that holds practicing attorneys responsible to their clients for the negligence of the process servers they choose to retain. Further, we see no sound reason for permitting attorneys who happen to use outside process servers to escape liability while attorneys who use in-house staff to perform the same functions can be held liable under ordinary principles of respondeat superior.

. In response to the concurrence, however, we find it necessary to note that the theory of liability we have approved herein is not interchangeable with the theories of liability the concurrer would permit, since the latter requires plaintiff to prove that defendants were negligent in their own right while the former does not. Thus, contrary to the concurrer’s contention, this case may not be resolved on the narrower ground the concurrence advances without the need to address the vicarious liability question that plaintiff’s appeal presents.