Hillsborough-northern judicial district
No. 2001-325

LAWYERS TITLE INSURANCE CORP.

v.

DAVID M. GROFF, ESQ.

Submitted: March 6, 2002
Opinion Issued: September 17, 2002

*Cook, Little, Rosenblatt & Manson, P.L.L.C.*, of Manchester (*Arnold Rosenblatt* and *Michael S. Owen* on the brief), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Peter G. Beeson* and *David P. Eby* on the brief), for the defendant.

BROCK, C.J. The defendant, David M. Groff, Esq., appeals from a judgment in favor of the plaintiff, Lawyers Title Insurance Corp., on its claims for breach of contract and negligence. Following a bench trial, the Superior Court (*Conboy*, J.) ruled that the defendant was vicariously liable for a title search conducted by a third party. We reverse.

The relevant undisputed facts follow. In 1991, the parties entered into an agreement which made the defendant the plaintiff's agent for the purpose of issuing title insurance policies. Under the agreement, the defendant was to "[r]eceive and process applications for title insurance in a timely, prudent, and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the ... instructions of [the plaintiff]." None of the duties specified in the agreement were delegable without the other party's prior written consent.

The agreement prohibited the defendant from committing the plaintiff "to a risk which [the plaintiff] has determined to be an extra-hazardous risk or which [the defendant] knows to be based upon a disputed title" without the plaintiff's written approval. It also prohibited him from issuing a commitment, policy or endorsement unless it was "based on reports or certificates of title made by either attorneys at law approved by [the plaintiff], ... or on reports or certificates of staff employees of [the defendant], or on reports of others approved in advance by [the plaintiff] at [the defendant]'s request." The agreement required these reports and certificates to "be supplemented by abstracts of title whenever required by [the plaintiff]." Whenever a report or certificate was based upon an

abstract of title, the defendant could not issue a commitment or policy thereon unless the plaintiff approved "the person, firm or corporation which prepared such abstract."

The agreement made the defendant liable to the plaintiff for all "losses resulting from acts or omissions of [the defendant]," including his failure to exercise "due care and diligence" in committing the plaintiff to risks by issuance of policies or to comply with either the terms of the agreement or the plaintiff's instructions.

In November 1998, the defendant was the settlement agent and attorney for a lender in a real estate transaction involving property in Londonderry. Prior to closing, he retained a title abstractor as an independent contractor to conduct a title search and prepare an abstractor's report. The title abstractor negligently failed to find and disclose a construction mortgage on the property. The defendant thus issued title insurance policies to both the lender and the buyers without excepting the mortgage. As a result, at closing, the construction mortgage was not discharged, and the defendant disbursed more than $128,000 directly to the seller.

The mortgagee later asserted its rights and threatened to foreclose on the property. The plaintiff paid the mortgagee over $152,000 to obtain an assignment of the mortgage and then discharged it. After obtaining a partial recovery from the seller, the plaintiff sued the defendant to recover $72,340.81, the difference between what the plaintiff paid the mortgagee and what it received from the seller, plus attorney's fees and costs.

The plaintiff asserted four claims against the defendant: negligence arising from duties the defendant owed it; negligence arising from duties the defendant owed to the lender, to which the plaintiff was subrogated; breach of contract; and breach of fiduciary duty. The trial court ruled in the plaintiff's favor on the breach of contract and negligence claims.

With respect to both negligence claims, the court found that the defendant did not breach a duty of care owed either to the plaintiff or to the mortgagee. Specifically, the trial court found that the defendant was not negligent in his decision to use an independent abstractor, his selection of the independent abstractor, or his review of the abstractor's work.

The court found the defendant vicariously liable, however, for the negligence of the title abstractor, whom the court ruled was an independent contractor. The defendant was liable for the abstractor's negligence, the court ruled, because his duty to perform an adequate title search was nondelegable both pursuant to the agency agreement and because this duty was essential to his representation of the lender.

With respect to the breach of contract claim, the court rejected the plaintiff's argument that the defendant breached the agency agreement by

using an "unapproved" abstractor, a ruling that has not been appealed. The trial court ruled, however, that the defendant breached the agreement by issuing an insurance policy that did not except a prior recorded mortgage, and, therefore, "was contrary to recognized title underwriting standards and was not prudent."

We will affirm the trial court's factual findings unless they are unsupported by the evidence and will affirm the trial court's legal rulings unless they are erroneous as a matter of law. *Morgenstern v. Town of Rye*, 147 N.H. 558, 561 (2002).

## I. Negligence Claims

Ordinarily, an employer is not liable for the negligence of an independent contractor. *See Valenti v. NET Properties Management*, 142 N.H. 633, 635 (1998); 8 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, PERSONAL INJURY — TORT AND INSURANCE PRACTICE § 169, at 238 (1996). There are three exceptions to this general rule: (1) negligence of the employer in selecting, instructing or supervising the contractor; (2) employment for work that is inherently dangerous; and (3) instances in which the employer is under a nondelegable duty. *See* MCNAMARA, *supra* § 170, at 241-43.

This case involves the third exception to this general rule – the exception for nondelegable duties. The trial court ruled that the defendant's duty to examine and clear title was nondelegable because of the agency agreement's nondelegation provision and because the duty was essential to the defendant's representation of the lender. We disagree. Under the agency agreement, the defendant had no duty to examine and clear title. Moreover, assuming *arguendo* that the defendant's representation of the lender included the duty to examine and clear title, we hold that this duty was not so essential to the representation as to render it nondelegable. A contrary ruling might require attorneys to guarantee the results obtained by any number of specialists hired as independent contractors, even when the attorneys did not agree to assume this responsibility.

### A. Contractual Duty

"Because the proper interpretation of a contract is ultimately a question of law for this court, we review the trial court's interpretation of the contract *de novo*." *Royal Oak Realty Trust v. Mordita Realty Trust*, 146 N.H. 578, 581 (2001) (quotations, brackets and citations omitted). "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document

as a whole." *Id.* (quotation omitted). "Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract." *Id.* (quotation omitted).

Paragraph 10 of the agreement between the parties stated that "[n]either [the] Agreement nor any right, interest, or duty arising under it is . . . delegable by either party hereto without the prior written consent of the other." The trial court reasoned that because the defendant's contractual duties included "a careful title search," the defendant was prohibited from delegating this duty.

To the contrary, the contract explicitly contemplated that the defendant would delegate this task. Paragraph 1(h) of the agreement required the defendant to base any insurance policy "on reports or certificates of staff employees of [the defendant], or on reports of others approved in advance by [the plaintiff] at [the defendant]'s request." Paragraph 1(h) further provided that if the report or certificate of title was based on a title abstract, the defendant could not issue a policy or commitment unless the plaintiff approved of "the person, firm or corporation which prepared such abstract."

■ Indeed, the defendant's only contractual duties with respect to examining title was to exercise "due care and diligence" when obtaining reports or certificates prepared by others. He had no contractual duty to examine title himself, or to ensure that those completing reports, certificates of title, or title abstracts, did so carefully. Had the parties intended the defendant to perform these duties, they could have included a provision in the agreement to that effect.

■ Moreover, the agreement expressly limited the defendant's liability to damages caused by his *own* acts and omissions. Paragraph 4 of the agreement provided that he was liable "for all attorney's fees, court costs, expenses, liability, damages, and loss or aggregate of losses resulting from acts or omissions *of [the] Agent*." (Emphasis added.) Paragraph 5 of the agreement similarly stated:

> As between Principal and Agent, Principal shall be liable for all losses, damages, expenses and costs arising out of claims covered by and based upon any title insurance commitments, policies or endorsements issued under the terms of this Agreement, excepting only those losses, damages, expenses, and costs caused by actions or omissions for which the Agent is in this Agreement made responsible.

Had the parties intended the defendant to be liable for the acts and omissions of others, the agreement could have easily so stated.

## B. Duty Essential to Legal Representation

■ The trial court ruled that the lender had a valid malpractice claim against the defendant and permitted the plaintiff to assert it pursuant to the title insurance policy's subrogation clause. The court ruled that the defendant was not negligent in his selection of the title abstractor or his review of the abstractor's work. Nonetheless, the court found the defendant vicariously liable for the abstractor's negligence because examining title was "essential" to his representation of the lender and, therefore, a nondelegable task.

New Hampshire law recognizes that certain duties are nondelegable. For instance, employers have a nondelegable duty to maintain a safe workplace, *see Rounds v. Standex International*, 131 N.H. 71, 76 (1988). Similarly, in *Valenti*, 142 N.H. at 636, the court held that a possessor of business premises has a nondelegable duty to maintain the premises and is thus liable for the negligence of an independent contractor hired to perform this duty on the possessor's behalf.

Whether lawyers owe any nondelegable duties to their clients is an issue of first impression for this court. "There are no clearly defined criteria for identifying duties that are nondelegable." *Kleeman v. Rheingold*, 614 N.E.2d 712, 715 (N.Y. 1993). Ultimately, the decision to categorize a duty as nondelegable rests upon policy considerations. *Id.*

Only a handful of courts have addressed this issue. For instance, in *Kleeman*, the New York Court of Appeals ruled that the duty of an attorney retained to commence an action to "exercise care in the service of process" was nondelegable. *Id.* at 716. The court observed that timely and accurate service of process is an "integral part" of commencing an action and is "a particularly critical component of a lawyer's over-all responsibility for commencing a client's lawsuit, since a mistake or oversight in this area can deprive the client of his or her day in court." *Id.*

The Supreme Court of New Jersey has ruled that an attorney's fiduciary responsibility for client trust funds is nondelegable. *Matter of Stransky*, 612 A.2d 373, 376 (N.J. 1992). And, courts in Louisiana have ruled that a signing attorney's duty, imposed by the Louisiana Code of Civil Procedure, to satisfy himself that the pleading is factually and legally responsible is nondelegable. *See Cooks v. Rodenbeck*, 711 So. 2d 444, 449 (La. Ct. App. 1998).

We decline to hold that an attorney may not delegate to an independent contractor the duty to examine title in a real estate transaction. *See Smith v. Boyd*, 639 A.2d 413, 415 (N.J. Super. 1993) (attorney who properly relied on title report prepared by independent contractor not liable for contractor's negligence).

As the trial court found, "it is common and accepted practice for New Hampshire attorneys to commission independent contractors to search titles" and to rely upon reports prepared by these independent title abstractors in preparing title opinions and issuing title insurance policies. As the trial court also found, "[t]itle abstracting does not require a Juris Doctor; does not involve the practice of law; and does not require the exercise of professional judgment or the rendering of legal opinions on marketability and insurability [of title]." And, as the defendant observes in his brief, the widespread use of independent title abstractors is client-driven, "a response to the demand of sophisticated consumers of legal services (such as lenders and title companies) for most cost-effective title work."

Were we to classify the duty to examine title as nondelegable, we would "open[] up an unrealistic and undue liability channel not only with respect to the relationship of attorneys to [title abstractors] but, by analogous extension, also to many other relationships in which attorneys retain specialists and experts in the discharge of their professional obligations to clients." *Kleeman*, 614 N.E.2d at 718 (Bellacosa, J., concurring).

Contrary to the plaintiff's assertions, an attorney does not "escape liability" by hiring an independent contractor to examine title. The attorney remains subject to liability for negligently hiring, supervising or retaining the abstractor, negligently reviewing the abstractor's report, or negligently rendering an opinion based upon the abstractor's report. *See North Bay Council, Inc. v. Bruckner*, 131 N.H. 538 (1989) (attorney negligently failed to advise client that language creating first refusal right constituted cloud on title). Moreover, the parties are free to agree that the duty to examine title is nondelegable.

### C. Liability Under Agency Law

■ The plaintiff relies upon general agency law principles to argue that the defendant is liable for the negligence of the independent title abstractor whom the plaintiff mischaracterizes as the defendant's "subagent." *See* RESTATEMENT (SECOND) OF AGENCY § 406 (1958) ("[u]nless otherwise agreed, an agent is responsible to the principal for the conduct of a subservant or other subagent with reference to the principal's affairs entrusted to the subagent"). "A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible." *Id.* § 5. In the agency agreement, the defendant agreed to be responsible only for his own acts and omissions, not for the acts and omissions of others. Thus, the title

abstractor was not the defendant's "subagent," and section 406 of the RESTATEMENT (SECOND) OF AGENCY does not apply.

*II. Breach of Contract Claim*

■ The court ruled that the defendant breached paragraph 2(a) of the agency agreement by issuing a title insurance policy that failed to except a prior recorded mortgage. Paragraph 2(a) provided:

> **2. Duties of Agent.** Agent shall: (a) Receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules, regulations, bulletins, manuals and instructions of [the plaintiff] and its subsidiaries.

This provision, however, merely required the defendant to give "due regard" to "recognized title insurance underwriting practices" and to process applications prudently, ethically and "in a timely ... manner." There was no evidence that the defendant failed to give "due regard" to "recognized title insurance underwriting practices," or that he behaved imprudently, unethically or in an untimely manner. Nor was there evidence that he failed to "exercise due care and diligence" in committing the plaintiff to insurance risks, as set forth in paragraph 4(a) of the agreement. Moreover, while the agreement prohibited the defendant from committing the plaintiff to insurance risks which he *knew* were based upon disputed title, it was silent as to risks of which he was reasonably unaware. In short, there was no evidence that the defendant breached the parties' agreement.

In light of our ruling, we need not address the parties' arguments regarding whether the agency agreement entitled the plaintiff to attorney's fees.

*Reversed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.