OPINION OF THE COURT
Diane L. Fitzpatrick, J.
Defendant brings a motion for summary judgment. Claimants have not responded to the motion. This motion was adjourned to March 3, 2004 after an order was granted relieving claimants’ prior attorneys, Melvin & Melvin, PLLC, of further representation of claimants. By that order, the court gave claimants 45 days to obtain new counsel and until March 3, 2004 to submit a response to defendant’s summary judgment motion. No other attorney has notified the court or filed a notice of appearance on behalf of claimants, and no opposition to the motion has been received.
In support of the motion, defendant has submitted, inter aha, the verified claim and answer, the verified bill of particulars, a portion of claimants’ deposition testimonies, and a portion of the deposition testimonies of Jim and Dawn Arkerson, an affidavit from Peter Cappuccilli, Jr., Director of the New York State Fair, and an affidavit from Richard Guanciale, Business Manager for the New York State Fair.
Relevant Facts
On September 2, 2001, claimants were attending the New York State Fair. At approximately 1:00 p.m., while walking through the Center of Progress Building looking at the various exhibits, claimant, Richard Chiumento, stopped at a booth where air purification systems were being sold. Claimant, Sheila Chiumento, kept walking, looking at another exhibit. After some time passed, she walked back to the booth where her husband was talking with a woman, now known as Dawn Arkerson. Al *920 though not really listening to their conversation, Sheila Chiumento noticed that the woman had a rag in her hand. The vendor, Ms. Arkerson, then placed the rag under the claimants’ noses, first Mr. Chiumento then Mrs. Chiumento. The rag was placed approximately two or three inches from Mrs. Chiumento’s nose and had a strong ammonia smell. Dawn Arkerson testified, during her deposition, that it is her usual practice to inform people that she is spraying ammonia on the paper towel, and that she does not hold it under people’s noses unless they want a closer smell. After Mrs. Chiumento smelled the rag, she backed away and started coughing. Claimants then proceeded to leave the building through the door next to a snack bar.
Mrs. Chiumento, who suffers from asthma, was having trouble breathing and the fresh air did not provide any relief. She used her inhalers, which she carried with her, but they did not help. Her difficult breathing continued to get worse as she and her husband walked around the fairgrounds, so they stopped at an information booth for directions to the Rural Metro Infirmary.[2] When they arrived at the infirmary, they were greeted by an emergency medical technician employed by an ambulance service, Eastern Paramedics, Inc., doing business as Rural/Metro Medical Services. Mrs. Chiumento told the technician that she had been exposed to a chemical in one of the buildings, and that she suffered from asthma but responded well to Solu-Medrol. After listening to her lungs and taking her vital signs, two nebulizer treatments were tried but she was still having trouble breathing. Mrs. Chiumento told the doctor, Timothy Page, M.D., that she responded well to Solu-Medrol but he ordered cough medicine. Mrs. Chiumento then told her husband that she needed to go to the hospital. The medical personnel then gave Mrs. Chiumento some breathing treatments. The doctor then listened to her lungs for the third time, and arranged for the ambulance to take her to Crouse-Irving Memorial Hospital. At the hospital, Mrs. Chiumento was given a treatment of Solu-Medrol, but it did not help her at all. A pressure mask was then placed over her face to force oxygen into her lungs. She was in intensive care for three days.
The affidavits from Peter Cappuccilli, Jr., Director of the New York State Fair, and Richard Guanciale, Business Manager for the New York State Fair, establish that the State entered into a license agreement with Pollution Solutions, licensees Jim and *921 Dawn Arkerson, for the rental of a 10 foot by 9 foot space in the Center of Progress Building on the New York State Fairgrounds for the sale of air/water purification systems. No real or personal property interest was transferred as part of the agreement. The defendant rented the right to occupy a certain area for the duration of the 2001 New York State Fair to the Arkersons on the condition that the licensee not use the premises for any “unlawful or illegal purpose, or for any purpose in violation of any federal, state or municipal law, ordinance, government rule, order or regulation and shall comply with all rules of the licensor.” The licensee, pursuant to the license agreement, was “responsible for all damage, loss and injury to persons and property due to the activities of the licensee, licensee’s agents and employees” (license agreement, exhibit E, para 4). The Arkersons provided a copy of their tax identification number, certificate of authority, and a copy of a certificate of insurance to the State.
The State Fair also contracted with Timothy Page, M.D., to perform duties as a doctor during the 2001 New York State Fair, and with Eastern Paramedics, Inc., doing business as Rural/ Metro Medical Services, to provide infirmary and ambulance services (copies of the contracts are attached to the motion as part of exhibit E).
The claim asserts that the State was negligent in treating claimant,[3] Sheila Chiumento, for exposure to chemical agents. Claimants’ verified bill of particulars, in addition to asserting that the medical staff at the State Fair failed to provide appropriate treatment to Mrs. Chiumento for more than three hours, also states that the State allowed “leasees [sic] to rent space and approach the public in the Center of Progress Building without insuring their marketing approach would not present a danger to someone such as Plaintiff [sic], Sheila Chiumento, who had multiple allergies” (exhibit D, verified bill of particulars, item 3 at 2).
Defendant argues, in support of summary judgment, that the State did not owe a duty to claimant to protect her from the marketing of a licensee at the New York State Fair. The State had no notice that Jim and Dawn Arkerson were engaging in any dangerous behavior, and had no control over their actions or the marketing of their products. Defendant next argues that the State is not liable for an independent contractor’s negli *922 gence; where, as here, there is no duty to perform or control the work, there is no assumption of a duty, and there is no special inherent danger in the work to be performed.
Defendant, as the party seeking summary judgment, has the burden to come forward with proof, in admissible form, to make out a prima facie case showing its entitlement to judgment as a matter of law (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Here, defendant has set forth sufficient proof, in admissible form, to establish it breached no duty owed to claimants as a matter of law.
Liability to Third Parties for Conduct of Arkersons
Claimants’ allegations regarding Mrs. Chiumento’s exposure to a chemical which caused her injuries arise solely out of the State’s alleged duty to protect them from the method of marketing the air/water purification system employed by the Arkersons. There is no allegation that the State had any affirmative role in exposing claimant, Mrs. Chiumento, to the chemical agent, or that her injuries were caused by any defect in the building or space provided. Any duty defendant may owe to claimants, under the facts as set forth herein, would require that the State have an obligation to control the conduct of its licensee.
“As a general rule, an owner of property has no duty to control the conduct of a tenant for the benefit of third parties absent knowledge of the need for such control and an opportunity to exercise it” (see, Aronson v Hyatt Intl. Corp., 202 AD2d 153, 154 [1994]; Cavanaugh v Knights of Columbus Council 4360, 142 AD2d 202, 204 [1988], lv denied 74 NY2d 604 [1989]; De Agramonte v City of Mt. Vernon, 112 App Div 291 [1906]; cf., Pulka v Edelman, 40 NY2d 781 [1976]). Here, no landlord-tenant relationship existed because no interest in real property was transferred, rather the Arkersons were licensees possessing only the privilege or permission for entry and possession for a specific purpose (see, Fish v Simpson, 124 Misc 2d 496, 506 [1984]). Yet, the duty of the State as licensor to a third party would be analogous (see, De Agramonte v City of Mt. Vernon, 112 App Div 291 [1906]).
The undisputed proof establishes that defendant had no notice of any other complaints or problems with the marketing *923 techniques employed by the Arkersons, who had also rented space for the 2000 New York State Fair, and there is no allegation that the marketing of their products was inherently dangerous. Defendant did not exercise any control over the conduct of the Arkersons in marketing their products, and there is nothing to suggest that the State should have known that there was any need for such control. Moreover, by the licensing agreement executed by the Director of the New York State Fair and the Arkersons, the Arkersons were responsible for all damages or injuries arising out of their activities.
Liability for Medical and Ambulance Services
The New York State Fair contracted with a doctor, Timothy Page, to provide medical services during the 2001 Fair, and with Eastern Paramedics, Inc., doing business as Rural/Metro Medical Services, to provide infirmary and ambulance services. Defendant argues that the medical services provided to claimant, Mrs. Chiumento, were provided by independent contractors for which the State has no liability.
The critical factor to determine whether one is an independent contractor or an employee, for purposes of assessing tort liability, is who has “[c]ontrol of the method and means by which the work is to be done” (Berger v Dykstra, 203 AD2d 754, 754 [1994], lv dismissed 84 NY2d 965 [1994]). Other factors for consideration include who provides the tools and equipment, how payment is made, and whether Social Security and taxes are withheld from such payments (Greene v Osterhoudt, 251 AD2d 786 [1998]). Although these are typically questions of fact, where the evidence is undisputed, the issue may be determined as a matter of law (Greene v Osterhoudt, 251 AD2d at 787).
In the contract with both Dr. Page and Eastern Paramedics, Inc., doing business as Rural/Metro Medical Services, as confirmed by the affidavit of Peter Cappuccilli, Jr., the State had no control over the method or means by which medical and ambulance services were provided. Both Dr. Page and Eastern Paramedics, Inc., doing business as Rural/Metro Medical Services, were to use their own specialized knowledge to treat Fair patrons who visited the infirmary building or needed medical services during the Fair. The contract also provided for payments to be made by a lump sum. Given these undisputed facts, the court finds that both Dr. Page and Eastern Paramedics, Inc., doing business as Rural/Metro Medical Services, were indepen *924 dent contractors with the State for the 2001 New York State Fair.
“The general rule is that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor’s negligent acts” (Kleeman v Rheingold, 81 NY2d 270, 273 [1993]). Although there are numerous exceptions to this general rule, none apply to the undisputed facts herein. Thus, the State is not liable for any negligence of Dr. Page or Eastern Paramedics, Inc., doing business as Rural/Metro Medical Services, in providing medical care to claimant, Sheila Chiumento.
Accordingly, based upon the foregoing, defendant has established its entitlement to judgment as a matter of law, the motion is granted, and the claim is dismissed.

. Mrs. Chiumento referred to the Rural Metro Infirmary as the “medic building” in her deposition.

. The claim actually says plaintiff.