■ DENISE TERIO, Appellant, v LANCE ROGER SPODEK et al., Respondents. [809 NYS2d 145]—

In an action, inter alia, to recover damages for legal malpractice, the plaintiff appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Putnam County (Hickman, J.), entered January 26, 2004, as, upon an order of the same court dated December 15, 2003, granting the motion of the defendant Lance Roger Spodek and the separate motion, denominated a cross motion, of the defendant Reich, Reich & Reich, P.C., for summary judgment dismissing the amended complaint insofar as asserted against them, dismissed the amended complaint.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the motions are denied, and the order dated December 15, 2003, is modified accordingly.

In 1997 the plaintiff consulted the defendant Lance Roger Spodek in connection with a potential bankruptcy filing. At that time, she allegedly told Spodek that her principal concern was protecting a life annuity with a 20-year guarantee of which she was the beneficiary, and which had been issued in October 1987 as part of the structured settlement of a personal injury tort claim (hereinafter the annuity). According to the plaintiff, Spodek counseled her to file a petition under Chapter 7 of the Bankruptcy Code (11 USC), and assured her that the annuity would be fully protected.

The plaintiff retained Spodek and, in August 1997 filed a Chapter 7 petition in which she claimed, inter alia, that the annuity was exempt property under Bankruptcy Code (11 USC) § 522 (b) (2) and Insurance Law § 3212.

In November 1997 the bankruptcy trustee objected to the plaintiff's claim that the annuity was fully exempt, and argued that the exemption was limited to the sum of $7,500 pursuant to Debtor and Creditor Law § 282. The matter was initially argued before the United States Bankruptcy Court for the Southern District of New York (hereinafter the Bankruptcy Court) on February 17, 1998, and adjourned, at the court's request, pending the submission of supplemental memoranda of law.

In April 1998 Spodek and the trustee discussed the possibility of settling the matter by having the plaintiff "buy back" the annuity for the sum of $15,000. Before giving Spodek any instructions regarding the proposed settlement, however, the plaintiff discharged him. By ex parte application dated April 13, 1998, Spodek requested to be relieved as counsel for the plaintiff in the bankruptcy proceeding, and also requested a 45-day stay of proceedings in order to allow the plaintiff to find new counsel. Meanwhile, on April 20, 1998, the trustee filed its supplemental memorandum of law. By order dated May 4, 1998, the Bankruptcy Court relieved Spodek as the plaintiff's counsel, but did not grant a temporary stay of proceedings.

On May 6, 1998, Spodek wrote to the plaintiff confirming that he had been relieved as her counsel and informing her that "there is no stay of the proceedings although I had requested one in my application." Accordingly, Spodek wrote: "It is imperative that you or your new counsel promptly obtain an extension of time to file Debtor's Supplemental Brief," which was already past due. He expressed his belief that such application would not be opposed "if *promptly* made." At that time, the proposed settlement was still a possibility, and the hearing date on the trustee's objection to the claimed exemption regarding the annuity had been adjourned to June 23, 1998.

On April 20, 1998, after having discharged Spodek, the plaintiff spoke with Robin Reich, an attorney with the defendant Reich, Reich & Reich, P.C. (hereinafter the Reich Firm). It is undisputed that both Reich and the plaintiff executed a form expressing the plaintiff's consent to appoint the Reich Firm as her new attorney, but that form was never filed with the Bankruptcy Court. The plaintiff also paid the Reich Firm a fee of $300, which Reich characterized as a "consultation fee" and the plaintiff characterized as a "retainer." Reich subsequently contacted the trustee to discuss the proposed settlement, explaining that she was "not yet the attorney of record." In early May 1998, however, Reich learned that the Bankruptcy Court would not approve the proposed settlement, and that the hearing on the trustee's motion was set for June 23, 1998. At the same time, Reich also learned that her home childcare provider was quitting. Because the Reich Firm was a small family practice, Reich was required to take an emergency leave of absence. She immediately informed the plaintiff that the Reich Firm would not be in a position to represent her in connection with the annuity litigation and would not become her attorney of record.

It is undisputed that as of May 5, 1998, the plaintiff had no attorney of record representing her in the bankruptcy proceeding. On May 12, 1998, Reich sent the plaintiff a letter reiterating that she was not her attorney of record, and urging her to retain counsel "with all due speed as there will be a hearing on June 23, 1998." She also reminded the plaintiff that "[a] brief must be written on your behalf." The plaintiff and/or her father nevertheless continued to write letters to Reich, prompting her, in letters dated May 21, May 22, May 28, and June 3, 1998, respectively, to repeat time and again that she was not the plaintiff's attorney of record and would not represent her in connection with the upcoming hearing, and to urge her, in no uncertain terms, to retain other counsel and seek an adjournment or a stay of the proceedings. On June 3, 1998, Reich wrote to the trustee and the Clerk of the Bankruptcy Court to "go on record, that I do *not* represent Ms. Terio, I have not filed an appearance nor do I plan to appear on her behalf." It is undisputed that the plaintiff received copies of those letters and was well aware that she had no counsel representing her. According to the plaintiff, she never contacted the trustee or the Bankruptcy Court to request an adjournment of the June 23, 1998, hearing because her father, a nonlawyer, told her that she had no authority to do so.

On or about June 22, 1998, Reich sent the plaintiff and her

father a handwritten fax cover sheet, stating: "I suggest you call the trustee, Paul Banner, and the Judge's Clerk to arrange for an adjournment. As I am not Ms. Terio's attorney I am unable to do so." The plaintiff acknowledges receiving this fax, but maintains that she did not follow Reich's advice to request an adjournment "[b]ecause my father didn't feel I was authorized to do so."

The hearing on the trustee's objection resumed on June 23, 1998, as scheduled, and the Bankruptcy Court, upon noting the lack of any appearance on behalf of the plaintiff and upon hearing oral argument from the trustee, granted the objection and denied the annuity exemption claimed by the plaintiff. A turnover order was issued on or about September 19, 1998.

The plaintiff subsequently commenced this legal malpractice action against Spodek and the Reich Firm, claiming that the defendants' negligence resulted in the loss of the annuity. Spodek moved for summary judgment dismissing the amended complaint insofar as asserted against him and, three days before the return date of Spodek's motion, the Reich Firm made a motion, improperly denominated a cross motion, for summary judgment. The Supreme Court granted the relief sought by both defendants and entered judgment accordingly.

Spodek's motion for summary judgment should have been denied, as he failed to establish his prima facie entitlement to judgment as a matter of law (see Ayotte v Gervasio, 81 NY2d 1062 [1993]). In order to recover damages for legal malpractice, the plaintiff must prove that Spodek failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession, that his negligence was a proximate cause of the loss of the annuity, and that but for such negligence, the plaintiff would not have sustained any damages (see Pistilli v Gandin, 10 AD3d 353 [2004]; see also Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, 96 NY2d 300 [2001]). For Spodek to succeed on a motion for summary judgment, he must tender evidence in admissible form establishing that the plaintiff is unable to prove at least one of the essential elements (see Crawford v McBride, 303 AD2d 442 [2003]; Ostriker v Taylor, Atkins & Ostrow, 258 AD2d 572 [1999]).

The gravamen of the plaintiff's malpractice allegations against Spodek is the alleged recommendation by Spodek in 1997 that she file a petition under Chapter 7 of the Bankruptcy Code, and his contemporaneous advice that such strategy would adequately protect the annuity with which she was so concerned. The plaintiff alleges, in essence, that Spodek misrepresented the

degree of risk inherent in this strategy and failed to discuss alternative strategies with her, and that she would not have agreed to file a Chapter 7 petition had she been fully informed of the risk.

In support of his motion, Spodek contended that his advice to the plaintiff, in 1997, that the annuity was exempt under Insurance Law § 3212, has since been endorsed by a number of courts (*see e.g. In re Lynch*, 321 BR 114 [Bankr SD NY 2005]; *In re Tappan*, 277 BR 491 [Bankr WD NY 2002]; *see also* Pryor, *Exemptions for Personal Injury Structured Settlements*, NYLJ, Sept. 21, 2004, at 16, col 1; *cf. In re Orso*, 283 F3d 686 [5th Cir 2002]; *but see In re Britton*, 288 BR 170 [Bankr ND NY 2002]) and therefore was not negligent. That argument, however, says nothing about the state of the law in 1997, when the advice was given, or the availability at that time of any alternatives to the Chapter 7 filing. Thus, on this record, Spodek's proof fell short of establishing, prima facie, his lack of negligence.

Spodek also contended that the plaintiff would be unable to establish that his negligence, if any, was a proximate cause of the loss of the annuity, and that but for such negligence she would have incurred no damages (*see Crawford v McBride, supra*; *Shopsin v Siben & Siben*, 268 AD2d 578 [2000]). To be sure, the loss of the annuity in this case cannot be traced to any single causative agent, but rather stands at the confluence of many concurrent causes, including, potentially, the plaintiff's own conduct after she discharged Spodek in April 1998 (*see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, supra*, at 305). However, in the absence of evidence regarding the availability, or lack of availability, of suitable alternatives to a Chapter 7 filing, and the relative degree of risk attendant to any such alternatives, it is not possible to determine, as a matter of law, that Spodek's negligence, if any, in recommending a Chapter 7 filing was not a proximate cause of the loss of the annuity.

We also agree with the plaintiff that the Reich Firm's motion, improperly denominated a cross motion, which was filed more than four months after Spodek's motion and only three days before its return date, was procedurally defective and should have been denied on that ground. "A cross motion is an improper vehicle for seeking affirmative relief from a nonmoving party" (*Mango v Long Is. Jewish-Hillside Med. Ctr.*, 123 AD2d 843, 844 [1986]). Particularly inasmuch as the Reich Firm's motion relied on evidence not previously submitted by Spodek, and the relief sought turned on a set of operative facts different from those upon which Spodek relied, we cannot

conclude that the plaintiff was not prejudiced by the lack of proper notice. In any event, contrary to the Reich Firm's contentions, it failed to establish, as a matter of law, that no attorney-client relationship was formed with the plaintiff, or, to the extent such a relationship existed, that the Reich Firm's failure to represent the plaintiff in the bankruptcy proceeding was not one of the many concurrent causes of the loss of the annuity.

In light of our determination, we do not reach the parties' remaining contentions. Adams, J.P., Ritter, Goldstein and Fisher, JJ., concur.