[848 NYS2d 663]

TED BARNETT et al., Respondents-Appellants, v JEFFREY L. SCHWARTZ et al., Appellants-Respondents.

Second Department, December 11, 2007

198

**APPEARANCES OF COUNSEL**

*Kaufman Borgeest & Ryan LLP*, New York City (*A. Michael Furman* and *Jeffrey W. Kleiner* of counsel), for appellants-respondents.

*Finder and Cuomo, LLP,* New York City (*Sherri A. Jayson* of counsel), for respondents-appellants.

## OPINION OF THE COURT

RITTER, J.

The issue to be decided on this appeal is whether the defendants-attorneys committed legal malpractice in their representation of the plaintiffs in the negotiation and closing of a lease and purchase option agreement concerning certain commercial property. The plaintiffs sought the property for the purpose of manufacturing barbecue sauce. Approximately two years prior to the signing of the agreement, the subject property was classified as an inactive hazardous waste disposal site. The defendants knew that there were environmental violations concerning the property that had to be dealt with and wrote to the relevant enforcement agencies asking for details. Despite the fact that those letters were never responded to, the defendants advised the plaintiffs to enter into the agreement at issue on an "as is" basis. The defendants never informed the plaintiffs of the environmental violations or the consequence of the "as is" clause of the agreement until two years later. We find the jury's determination that the plaintiffs were entitled to such information before entering into the agreement, and that the defendants committed malpractice by failing to advise the plaintiffs about the violations and the effect of the "as is" clause, was reached on a fair interpretation of the evidence.

The relevant evidence adduced at trial may be summarized as follows: in November 1992 the plaintiffs retained the defendant Jeffrey Schwartz and the defendant law firm to provide legal services in connection with a lease and purchase option agreement concerning certain commercial property in Freeport for the disclosed purpose of manufacturing barbecue sauce. In December 1992, upon the advice and counsel of the defendants, the plaintiffs entered into an "as is" lease for the property with an option to buy (hereinafter the agreement). Approximately two years earlier, in 1990, the New York State Department of Environmental Conservation (hereinafter the DEC) had classified the property a level 2A inactive hazardous waste disposal site due to the activities of a prior tenant, Ranco Wiping Cloth, Inc. (hereinafter Ranco). Ranco had collected rags from the printing industry soaked with solvent, ink, and oil, and leakage from storage barrels had collected in a storm drain on the property. The plaintiff Ted Barnett (hereinafter Barnett) testified that the plaintiffs were never advised and were otherwise un-

aware of the environmental condition of the property when they signed the agreement in 1992, and would not have signed the agreement had they known. Indeed, he asserted, the plaintiffs did not learn of the status of the property as a hazardous waste site until February 1994, when informed of such by passersby. By that time, he noted, they had already invested money in the property, inter alia, for renovations. Further, he testified that, angered by the discovery, the plaintiffs sought legal advice from Schwartz, who advised them that they had no recourse as against the landlord/owner because they had signed an "as is" lease. However, Barnett asserted, Schwartz opined that the cleanup would probably take approximately six months, and advised the plaintiffs to continue paying rent and to exercise the option to purchase the property. Pursuant to the agreement, the option to purchase the property could be exercised on or before December 1, 1994. The plaintiffs stopped paying rent in late 1995. In 1996, the landlord/owner agreed to clean up the property. However, the cleanup took nearly three years and the property was not removed from the inactive hazardous waste site registry until on or about November 15, 2000. Barnett testified that the plaintiffs thereafter decided to vacate the property after Schwartz informed them that the DEC would be conducting additional periodic testing of the air quality at the property, which Barnett concluded meant that the environmental problems with the property might not have been remediated, and that the health of his workers and the future of his business might be put in jeopardy. In the period prior to vacating, the plaintiffs had additional discussions with Schwartz concerning legal action against the landlord/owner. However, Barnett asserted, Schwartz advised them that the statutes of limitation had run on various potential causes of action, and that a fraud cause of action was untenable because New York applied the doctrine of caveat emptor to real estate purchases and there had been no affirmative misrepresentations by the landlord/owner. The plaintiffs also entered into evidence two letters written by Schwartz, both dated November 30, 1992, sent to the Nassau County Department of Health and the "Underground Ejection Control Section, US Environmental Protection Agency," respectively, seeking any information on file concerning the property. The letters noted that former occupants of the property included, among others, the "Renco Wiping Clothe Company [sic]," and that the "Building Department in Freeport advised the purchasers that there may have been a problem

with a well on the premises." The letters never got a response. Barnett denied that the plaintiffs had seen the letters or been made aware of their contents until they commenced this action in 2002. The plaintiffs also presented the testimony of a legal expert who opined, inter alia, that the defendants' failure to have followed through on their own inquiries, which would have revealed the environmental condition of the property, was not in accord with good and accepted legal practice. The plaintiffs also presented the testimony of their daughter, Joell Barnett, an attorney. The plaintiffs' daughter testified that she attended a meeting between Schwartz and her parents in 1996, at which Schwartz admitted that he had not undertaken adequate environmental inquiries and that he had made "a mistake."

Schwartz testified that the landlord/owner's attorney had informed him in 1992 that a previous tenant of the property was a rag cleaning business, and that he had informed the plaintiffs of that fact. Further, he asserted, he had discussed with the plaintiffs the letters and the option of having an environmental analysis of the property performed, and the plaintiffs had decided against an environmental analysis due to the cost. Indeed, he testified, the plaintiffs signed the agreement prior to receiving responses to the letters because both they and the landlord/owner were anxious to complete the transaction. Schwartz asserted that he discussed every term of the agreement with the plaintiffs, including the "as is" clause. Further, he testified, he tried to insert an indemnification clause in the agreement regarding prior uses of the property, but the attorney for the landlord/owner refused. Consequently, he asserted, he explained to the plaintiffs that there was no way of knowing whether there were environmental problems with the property, and that the landlord/owner would not indemnify them if there were. Schwartz testified that the plaintiffs remained interested in purchasing the property even after learning of its environmental status and, consequently, he continued to seek information on the property, to discuss options with the plaintiffs, and to negotiate with the landlord/owner. Concerning his comments to the plaintiffs' daughter, Schwartz asserted that no matter how many times he explained the lack of legal options against the landlord/owner, the plaintiffs and their daughter continued to question why they couldn't sue. Schwartz admitted that he stated, "What do you want me to say? That a mistake was made? . . . Okay, we made a mistake." However, he asserted, what he meant was that, in retrospect, the plaintiffs

made a mistake signing the agreement with an "as is" clause. The defendants also presented the testimony of an expert in environmental geology who opined, inter alia, that before 1993 there were no specific standards in place to conduct environmental investigations of property, and the ability to do so was hindered by the lack of computer databases to search for records. Further, the defendants presented the testimony of a legal expert who opined, among other things, that Schwartz did not breach a duty of care to the plaintiffs by allowing them to enter into the "as is" agreement for the property without performing a so-called "phase one" environmental assessment because the agreement, in the main, was a lease, not a purchase, and because such assessments were not performed in 1992.

The jury found in favor of the plaintiffs and awarded damages. We modify only to award the plaintiffs prejudgment interest.

■ On appeal, the defendants argue, inter alia, that the verdict should be set aside as against the weight of the evidence. The defendants assert, among other things, that they were not negligent in advising the plaintiffs concerning the agreement because there were no definitive standards for environmental assessments in 1992. Indeed, they argue, the plaintiffs found the property and negotiated the terms of the agreement prior to retaining them, and signed the agreement with the "as is" clause. In any event, the defendants assert, even if they were negligent, there was no causal nexus to the plaintiffs' damages because the plaintiffs made the *"independent business decision* to await the environmental clean-up of the [property] and to renegotiate and extend the agreement". Indeed, the defendants argue, after the cleanup was completed there was no statutory or regulatory prohibition against using the property for the manufacture of barbecue sauce, and the plaintiffs' true motivation for vacating the property was their decision to have the sauce manufactured by an established company. Finally, the defendants assert, the Supreme Court gave an erroneous jury charge on causation and permitted the jury to consider a theory of liability neither pleaded nor argued. However, to the extent that these arguments are preserved for appellate review, they lack merit.

The defendants' argument concerning causation has an impact upon the analysis of other issues raised. Thus, it will be discussed first.

The defendants argue that the Supreme Court erred when it charged the jury that the plaintiffs needed to prove only that

the defendants' negligence was a proximate cause (i.e., a "substantial" cause) of damages. Rather, they assert, the court should have charged the jury, as they requested, that the plaintiffs needed to prove that "but for" such negligence they would not have sustained damages. The defendants argue that the "less rigorous standard" of causation charged by the Supreme Court warrants reversal and a new trial. However, this argument lacks merit.

The elements to be proved in a legal malpractice action have been subjected to various formulations. Thus, while it is clear that a plaintiff-client must prove negligence (i.e., that the defendant-attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by members of the legal community), some cases hold that the negligence must be "the" proximate cause of damages (*Britt v Legal Aid Socy.*, 95 NY2d 443, 446 [2000]; *see e.g. Kleeman v Rheingold*, 81 NY2d 270 [1993]; *Caruso, Caruso & Branda, P.C. v Hirsch*, 41 AD3d 407 [2007]; *Cohen v Wallace & Minchenberg*, 39 AD3d 691 [2007]; *Cummings v Donovan*, 36 AD3d 648 [2007]; *Kotzian v McCarthy*, 36 AD3d 863 [2007]), while others hold that it must be "a" proximate cause of damages (*Bauza v Livington*, 40 AD3d 791, 793 [2007]; *see e.g. Moran v McCarthy, Safrath & Carbone, P.C.*, 31 AD3d 725 [2006]; *Terio v Spodek*, 25 AD3d 781 [2006]; *Pistilli v Gandin*, 10 AD3d 353 [2004]). There are also cases from this Court requiring the damages to be a "direct result" of the negligence (*Caruso, Caruso & Branda, P.C. v Hirsch*, 41 AD3d 407, 409 [2007]; *Kotzian v McCarthy*, 36 AD3d 863 [2007]; *Moran v McCarthy, Safrath & Carbone, P.C.*, 31 AD3d 725 [2006]). In the main, the cases from the Court of Appeals, including the most recent, do not expressly require that the negligence be either "the" or "a" proximate cause of damages, but require proof that, "but for" the negligence of the defendant-attorney, the plaintiff-client would have prevailed in the underlying action (in a classic lawsuit-within-a-lawsuit scenario) or would not have incurred damages (in an action alleging negligent advice, etc.) (*see e.g. Leder v Spiegel*, 9 NY3d 836 [2007]; *Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438 [2007]; *AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428 [2007]; *Davis v Klein*, 88 NY2d 1008 [1996]; *Carmel v Lunney*, 70 NY2d 169 [1987]). The defendants here, while not expressly describing the difference between proximate and "but for" causation, argue that the latter requires a greater, more direct degree of causation. However, we find no substantive

import to the variations in the formulations discussed above, and hold that a plaintiff-client in a legal malpractice action need prove only that the defendant-attorney's negligence was a proximate cause of damages.

First, the parties have not cited, and research has not revealed, any case from the Court of Appeals or any other court expressly holding that "but for" causation is synonymous with sole proximate cause, or that requires a degree of causation in legal malpractice cases greater than proximate cause, i.e., greater than that which must be typically proved as against any other professional or lay defendant in a negligence action. Similarly, the parties have not cited, and research has not revealed, any case discussing or identifying any basis for singling out attorneys for special treatment on the issue of causation. The Pattern Jury Instruction on legal malpractice, which focuses upon the lawsuit-within-a-lawsuit scenario, does not expressly use either the phrase "but for" or "proximate cause" in its formulation (PJI 2:152). However, the comments to the instruction, while noting the "but for" formulation, provide that a defendant-attorney's negligence need only be "a" proximate cause of damages and refer the reader to the general Pattern Jury Instruction on proximate cause (1 NY PJI3d 2:152, at 872, 880 [2008]; PJI 2:70). Moreover, our reading of the case law does not reveal that a heightened standard for causation is actually being applied in legal malpractice cases. Rather, all results can be explained by application of general principles of proximate cause. For example, in the lawsuit-within-a-lawsuit scenario, the plaintiff-client must prove that but for the defendant-attorney's negligence they would have prevailed in the underlying action. Stated otherwise, if the plaintiff-client cannot prove that it would have prevailed in the underlying action, the defendant-attorney's negligence was not a proximate cause of any damages arising from the loss of the same. Further, there are several decisions from this Court requiring the plaintiff-client to prove both that the defendant-attorney's negligence was "a" proximate cause of damages, and that "but for" such negligence it would have prevailed in the underlying action or would not have incurred damages (see e.g. Moran v McCarthy, Safrath & Carbone, P.C., 31 AD3d 725 [2006]; Terio v Spodek, 25 AD3d 781 [2006]). Clearly, these decisions do not provide for two different measures of causation in the same standard. Indeed, it would appear that the "but for" language, which grew out of the lawsuit-within-a-lawsuit scenario (see

*Carmel v Lunney*, 70 NY2d 169 [1987]; *N.A. Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine*, 45 NY2d 730 [1978]), is merely a recognition of the factual particularities of proving proximate cause and damages in such an action. When applied in a case involving negligent legal advice (i.e., a case where there is no underlying cause of action to lose), it would appear that the "but for" formulation is merely a recognition of the factual complexities that may attend proving proximate cause when the legal advice was merely one of a myriad of factors that contributed to the plaintiff-client's ultimate decision or course of action (*see e.g. AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428 [2007]). Finally, we note, a conclusion that the "but for" formulation of causation requires proof that the negligence of the defendant-attorney was the sole proximate cause of damages is contrary to the holding of the Court of Appeals that the contributory negligence of the plaintiff-client may be pleaded as an affirmative defense (*see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300 [2001]; *see also Boudreau v Ivanov*, 154 AD2d 638 [1989]). In sum, regardless of the formulation employed, a plaintiff in a legal malpractice action need prove only that the defendant-attorney's negligence was a proximate cause of damages.

A jury verdict should not be set aside as against the weight of the evidence unless the evidence at trial so preponderated in favor of the appealing party that the verdict could not have been reached on any fair interpretation of the evidence (*see Lolik v Big V Supermarkets*, 86 NY2d 744 [1995]; *Tapia v Dattco, Inc.*, 32 AD3d 842 [2006]; *Nicastro v Park*, 113 AD2d 129 [1985]). Where the verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view (*see Tapia v Dattco, Inc.*, 32 AD3d 842 [2006]; *Torres v Esaian*, 5 AD3d 670 [2004]). Here, a fair interpretation of the evidence supports the jury's conclusion that the defendants failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession in advising the plaintiffs concerning the agreement, and that but for such negligence the plaintiffs would not have incurred the damages awarded (*see Edwards v Haas, Greenstein, Samson, Cohen & Gerstein, P.C.*, 17 AD3d 517 [2005]). The plaintiffs did not receive the benefit which they sought from the agreement, and which they retained the defendants to help them achieve, i.e., the lease/purchase of

property suitable for immediate use as a plant to manufacture barbecue sauce. Rather, at best, the plaintiffs obtained an option to purchase a remediated hazardous waste disposal site some eight years after the agreement was signed, and some five years after the date provided for a sale in the agreement, during which time the property remained completely unsuitable for its intended use. Indeed, the defendants did not simply fail to engage in due diligence concerning the environmental condition of the property. Rather, they were clearly made aware of actual environmental issues with the property and failed to follow up on their own inquiries or inform the plaintiffs of the issues or the consequence of the same on signing an "as is" agreement for the property. This conclusion is not altered by the lack of definitive standards for environmental assessments in 1992 or the lack of computer databases. The conflicting testimony, inter alia, as to what was discussed prior to the signing of the agreement, and whether the defendants' failure to have discovered and advised the plaintiffs concerning the environmental condition of the property constituted malpractice, merely raised issues of credibility for the jurors, whose determinations are entitled to great deference (see *Barthelemy v Spivack*, 41 AD3d 398 [2007]; *Hedaya Home Fashions, Inc. v American Motorists Ins. Co.*, 12 AD3d 639 [2004]). Otherwise, it is ironic that the defendants would argue either that they played no part in the decision to enter into the agreement, when this was the purpose for which they were retained, or that the plaintiffs somehow engaged in culpable conduct by signing the agreement with an "as is" clause, when it was found that the defendants were negligent in providing the plaintiffs with information sufficient to have understood the ramifications of doing so. Further, whether or not the landlord/owner would have entered into the agreement without the "as is" clause is irrelevant. Regardless, had the plaintiffs been made aware of the actual facts, they would have retained their most obvious option—declining to enter into the agreement altogether. Finally, the defendants' arguments concerning the plaintiffs' conduct after learning of the environmental condition of the property do not warrant a different conclusion. In a theme pressed throughout the trial, the defendants argue that the plaintiffs' continued interest in the property even after learning of its status as a hazardous waste disposal site proved that the plaintiffs would have entered into the agreement regardless of the environmental condition of the property and, in general, relegated any negligence by them

to the realm of, in effect, water under the bridge. However, the contention that the plaintiffs would have entered into the "as is" agreement concerning the property regardless of its environmental condition is speculative on its face, and contrary to both common sense and the express testimony of Barnett. The jury's crediting of such testimony is entitled to great deference on appeal. Otherwise, we do not see how the plaintiffs' continued interest in the property operated to negate or supersede the defendants' negligence in the first instance. As noted, supra, the benefit the plaintiffs sought from the agreement, and that which they retained the defendants to help them achieve, was the lease/purchase of property suitable for immediate use as a plant to manufacture barbecue sauce, not the option to purchase a remediated hazardous waste disposal site some eight years later. In any event, the defendants' arguments were made to the jury, and a fair interpretation of the evidence supports the jury's conclusion that the plaintiffs' continued efforts to salvage what they could from the agreement, after having already invested time and money in the property, and after having been advised by Schwartz both that they lacked any legal recourse against the landlord/owner and that cleanup would probably take only six months, did not negate or supersede the defendants' negligence in the first instance. In sum, the jury's verdict as to liability is sustained.

■ The defendants also raise two challenges to the damages award. First, they argue, the plaintiffs' "principal alleged damages (i.e. lost profits from their barbecue sauce business) are entirely speculative." However, the plaintiffs did not seek damages for lost profits. Further, the court's charge to the jury expressly limited the potential damages to rent paid, the cost of renovations (not including equipment), and legal fees. Second, the defendants argue, the plaintiffs should not have been awarded damages for rent paid because the agreement provided that such rent would be refunded only if the plaintiffs exercised the option to purchase the property, which they did not, despite the lack of any impediment to doing so. However, the plaintiffs were not limited to seeking the return of rent paid pursuant to the terms of the agreement. Further, they did not pursue such a theory of recovery. Rather, the plaintiffs sought the return of rent paid as damages arising from the negligence of the defendants. Here, a fair interpretation of the evidence supports the jury's conclusion that, but for the defendants' negligence, the plaintiffs would not have incurred rent payments on prop-

erty completely unsuitable for its intended use. Indeed, implicit in the defendants' argument concerning the damages for rent paid is the notion that the plaintiffs were somehow obligated to purchase the property once it was remediated, and that their failure to have done so shifted the responsibility for any damages solely to them. However, the defendants have not identified any basis for such an obligation and none is apparent. Moreover, the argument hinges on the dubious speculation that the plaintiffs would not have suffered any damages had they ultimately purchased the property. In sum, the jury's verdict as to damages is sustained.

The plaintiffs are entitled to an award of prejudgment interest. "CPLR 5001 operates to permit an award of prejudgment interest from the date of the accrual of the malpractice action in actions seeking damages for attorney malpractice" (*Horstmann v Nicholas J. Grasso, P.C.*, 210 AD2d 671, 673 [1994]; *see also Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d at 444 n 3; *Meyer v Glynn*, 278 AD2d 291 [2000]; *Butler v Brown*, 180 AD2d 406 [1992]). In relevant part, CPLR 5001 (b) provides:

> "[I]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."

Here, the earliest ascertainable date that the plaintiffs' legal malpractice cause of action existed is December 21, 1992, the date that the agreement was entered into (*see McCoy v Feinman*, 99 NY2d 295 [2002]; *Town of Wallkill v Rosenstein*, 40 AD3d 972 [2007]). Thus, interest is to be computed from the dates that the damages were incurred (i.e., the dates that the plaintiffs paid the amounts awarded as damages for rent, renovations, and legal fees) or, if impractical, from a single reasonable intermediate date.

The defendants' remaining contention concerning the court's charge to the jury is unpreserved for appellate review (*see* CPLR 5501 [a] [3]) and, in any event, without merit.

Therefore, the judgment is modified, on the law, by adding thereto a provision awarding the plaintiffs prejudgment interest; as so modified, the judgment is affirmed, with costs to the

plaintiffs, and the matter is remitted to the Supreme Court, Nassau County, for entry of an amended judgment with prejudgment interest to be calculated in accordance herewith, and the order entered April 20, 2005, is modified accordingly.

Lifson, J. (dissenting). On November 4, 1992, the plaintiffs retained the defendant Jeffrey L. Schwartz, a member of the defendant law firm. Schwartz counseled the plaintiffs to enter into an "as is" lease for property at 409 Main Street in Freeport (hereinafter the premises) with a rent of $2,400 per month and an option to buy, exercisable prior to December 1, 1994, for the sum of $240,000 less credits for rent paid. The term of the lease was for two years, beginning on January 1, 1993, and expiring on December 31, 1994. The complaint alleged that Schwartz never conducted any due diligence concerning the premises, its history, or prior uses. As a result, the plaintiffs were allegedly unaware, when they executed the lease on December 21, 1992, that the premises had been classified by the New York State Department of Environmental Conservation (hereinafter the DEC) as a level 2A inactive hazardous waste disposal site.

According to the plaintiff Ted Barnett (hereinafter Barnett), after executing the lease the plaintiffs began renovating the premises for its intended use, to wit, the manufacture of barbecue sauce. Barnett claimed that he did not learn of the status of the premises as an environmentally-impaired site until February of 1994. He informed Schwartz, who advised him to continue paying rent while he obtained an extension of the option to buy until December 31, 1995, during which time he would get the landlord to remedy the condition. Additional extensions of the option were granted over the next few years. In August 2001 the plaintiffs received a letter from Schwartz advising them that the condition had been remedied and that, in order to exercise the option to buy, they had to obtain financing. Instead, the plaintiffs opted to have their sauce manufactured by a third party and failed to obtain the financing for the purchase of the premises.

The proof at trial demonstrated, without contradiction, the following additional facts. The plaintiffs stopped paying rent and taxes in October 1995 and remained in possession until 2001 without making any payments. The site was officially delisted as a hazardous waste site by the DEC on December 15, 2000. Until 2001, the plaintiffs continued to tell Schwartz that they were interested in purchasing the property. Thereafter,

they changed their minds and instead brought the instant action. The building was sold a year or two later for the sum of $280,000—a price in excess of the price of the option exclusive of the credits to which the plaintiffs were entitled.

At trial the defendants called an expert who testified that during the time period in question the failure to condition a lease on a phase one environmental assessment would not be a breach of the then-prevailing standards of legal representation. The defendants' expert maintained that environmental assessment would not be done in the context of a lease and might only be warranted in the context of a purchase because the cost of such assessment was prohibitive and would only be justified in the context of a purchase. The defendants' expert also testified that the presence of an "as is" clause would not necessarily be a red flag and is present in almost every similar transaction. The plaintiffs' expert agreed that an "as is" clause is not uncommon, but asserted that, in the context of this lease/option to purchase transaction and the facts known to the defendants, additional steps should have been taken to insure that the site was not environmentally impaired.

As part of the jury charge the court stated that the plaintiffs were required to establish "that the defendant's negligence was a substantial factor in causing actual damages to the plaintiffs." Consistent with that charge, the verdict sheet instructed the jury to answer the following questions: "Was the defendant Jeffrey Schwartz's negligent conduct in connection with the lease and purchase agreement a substantial contributing cause of actual financial damages to . . . the plaintiffs?" The defense took vigorous exception to the "substantial contributing cause" language in both the charge and the verdict sheet.

In an action to recover damages for legal malpractice, the plaintiff must prove the following three essential elements: (1) the negligence of the attorney; (2) that such "negligence was *the* proximate cause of the loss sustained" (*Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 170 AD2d 108, 114, *affd* 80 NY2d 377 [1992] [emphasis added]), and (3) that the plaintiff sustained damages as a result of the attorney's action or inaction (*id.; see Bauza v Livington*, 40 AD3d 791 [2007]). Legal malpractice must be demonstrated by proof sufficient to show that the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community (*see Bauza v Livington*, 40 AD3d 791 [2007]). To establish the elements of proximate cause and

actual damages in a legal malpractice case, a plaintiff must prove that a favorable outcome would have been obtained but for the attorney's negligence (*see Carmel v Lunney*, 70 NY2d 169 [1987]; *Zasso v Maher*, 226 AD2d 366 [1996]; *Hill v Fisher & Fisher*, 203 AD2d 328 [1994]). Failure to plead and prove the requisite allegation that "but for" the attorney's alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages is fatal to the viability of a legal malpractice action (*see Bauza v Livington*, 40 AD3d 791 [2007]).

Under New York law, " 'unless the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the professional service, or the attorney's conduct falls below any standard of due care, expert testimony will be necessary to establish that the attorney breached a standard of professional care and skill' " (*Estate of Ginor v Landsberg*, 960 F Supp 661, 672 [1996], *affd* 159 F3d 1346 [1998], quoting *Greene v Payne, Wood & Littlejohn*, 197 AD2d 664, 666 [1993]; *see also O'Brien v Spuck*, 99 AD2d 910 [1984]).

Applying these basic principles to the facts adduced at this trial, I conclude that the judgment must be reversed and that the defendants' motion for a directed verdict should have been granted. Based on this record no reasonable view of the evidence can sustain the verdict reached by the jury. Both the plaintiffs' and the defendants' experts testified that in representing a tenant, an "as is" lease is not uncommon. Moreover, on cross-examination, the plaintiffs' expert conceded that there was no statutory or regulatory prohibitions which would have prevented the plaintiffs from using the premises for the purpose intended in 1992 to 1994 notwithstanding its listing as a possible inactive hazardous waste site. Thus, whether viewed as a lease or a prospective purchase of property in toto, the alleged environmental status of the premises did not impair the intended use of the premises by the plaintiffs. The marketability of the premises is not at issue since the plaintiffs were not obligated to purchase the premises.

Even if that were not the case, insofar as the alleged malpractice entailed Schwartz's failure to ascertain the status of the premises or his advice to the plaintiffs to enter into the lease despite the "as is" clause without further due diligence on their part, the plaintiffs' proof did not establish that had Schwartz insisted on something other than the "as is" clause the landlord would have acquiesced to such efforts, and that absent such an alternative provision in the lease the plaintiffs would not have

entered into the lease. These omissions of proof are fatal to the plaintiffs' cause of action (*see Tortura v Sullivan Papain Block McGrath & Cannavo, P.C.*, 21 AD3d 1082 [2005]). Barnett's pro forma declaration that he would not have entered into the lease if he had known its environmental status is not determinative and is only one factor for the jury to consider. The facts established here are such that a jury correctly charged could have found otherwise. It is irrefutable that, even after learning of the premises' status as a level 2A inactive hazardous waste site, the plaintiffs opted to continue to exercise their option and expressed an unequivocal desire to continue with a conveyance of title. Thus, the alleged malpractice of the attorney in not exercising due diligence was not the cause of the plaintiffs' alleged injury. Indeed, Barnett candidly admitted that the gravamen of his action was not the failure to exercise due diligence but, rather, Schwartz's repeated advice to continue with the deal notwithstanding the environmental status of the premises. The plaintiffs changed their minds only after they elected a different alternative for the marketing and/or manufacturing of the barbecue sauce, a circumstance which occurred after the premises had been delisted by the DEC.

To the extent that the alleged malpractice was predicated on Schwartz's advice to see the deal through, there is no proof that such advice constituted malpractice or resulted in any damages to the plaintiffs. As we have consistently held, the mere dissatisfaction with a strategic choice of counsel is not malpractice (*see Magnacoustics, Inc. v Ostrolenk, Faber, Gerb & Soffen*, 303 AD2d 561 [2003]). On the contrary, had the plaintiffs followed that advice, they would have had the use of the premises without rent for the entire period beyond October of 1995 and, upon its sale (i.e., if they were disposed to sell), would have realized a sum in excess of the option price. In other words, the plaintiffs would have sustained no damages had they followed their attorney's advice to consummate the transaction.

Accordingly, I feel there were no facts upon which the jury could render a finding of legal malpractice. Even if that were not the case, the question submitted to the jury was, in any event, not proper, as the jury was required to determine if the defendants' alleged acts of malpractice were the proximate cause (i.e., direct, primary, or sole cause) of the plaintiffs' damages (*see Carmel v Lunney*, 70 NY2d 169 [1987]). The footnote cited in *Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner* (96 NY2d 300, 305 n 2 [2001]), citing

*Cicorelli v Capobianco* (89 AD2d 842 [1982], *affd* 59 NY2d 626 [1983]), relied upon by the majority, does not require a contrary result. A close examination of these cases indicates that while the word "mitigate" was employed, the holdings merely show such word was utilized as expressing that acts of the client can "negate" the imposition of liability upon the attorney for malpractice and consequently can be pleaded as an affirmative defense by the attorney/defendant. Neither of these cited cases or any Court of Appeals cases cited by the majority indicate the requisite "but for" requirement is satisfied by proof that the malpractice was merely one (of several proven causes) resulting in the loss sustained.

While I concede that in sustaining their burden in satisfying the "but for" requirement of the legal malpractice cause of action, the plaintiffs need not show that the defendants' conduct was the only or sole factor resulting in the plaintiffs' damages, nonetheless, the plaintiff must still conclusively demonstrate that such conduct was the primary, direct, or predominant cause of the loss sustained (*see* 7A CJS, Attorney and Client § 302). I believe that to prevail in a legal malpractice action the plaintiff is required to prove something more than that which was charged to the jury herein (to wit, that the jury need only find that the attorneys' neglect was *a* proximate cause of the plaintiffs' damages—i.e., one of several possible causes, including the plaintiffs' own culpable conduct). Whether intended or not, the trial court's employment of the phraseology in question and the majority's approval thereof will inevitably be construed by future plaintiffs as a diminishment of what heretofore had been a very rigorous standard of proof. I cannot in good conscience join in an opinion which will diminish the burden of proof to be met by plaintiffs in legal malpractice cases, and which is not in accordance with our precedent.

In my view, the judgment under appeal should be reversed and that branch of the defendants' motion which was pursuant to CPLR 4404 to set aside the jury verdict and for judgment as a matter of law should have been granted. Alternatively, the matter should be remitted for a new trial to determine if the plaintiffs met their burden with respect to establishing the "but for" requirement of a legal malpractice action. I, therefore, respectfully dissent.

CRANE, J.P., and BALKIN, J., concur with RITTER, J.; LIFSON, J., dissents and votes to reverse the judgment in a separate opinion.

Ordered that the judgment is modified, on the law, by adding thereto a provision awarding the plaintiffs prejudgment interest; as so modified, the judgment is affirmed, with costs to the plaintiffs, and the matter is remitted to the Supreme Court, Nassau County, for entry of an amended judgment with prejudgment interest to be calculated in accordance herewith, and the order entered April 20, 2005, is modified accordingly.