■ KEVIN ROBERT HEALY, by His Parents and Natural Guardians, PATRICIA HEALY and Another, et al., Respondents, v FINZ & FINZ, P.C., Appellant. [918 NYS2d 500]—

The plaintiff Patricia Healy (hereinafter the plaintiff) became pregnant with triplets—a girl and two boys—in 1994. The boys were twins and shared a placenta, while the girl had her own placenta. One of the boys, later named Sean, died in utero sometime between September 8 and 9, 1994. The plaintiff's doctors prolonged her pregnancy as long as possible, because the two remaining babies, the infant plaintiff, Kevin, and the girl, were at risk for low birth weight. The plaintiff went into labor on September 20, 1994, and the babies were delivered by cesarean section. Kevin was born with periventricular leukomalacia, a form of cerebral palsy that renders him dependent on others for his basic needs. There is no dispute that the infant plaintiff's condition resulted from him sharing a placenta with his deceased brother.

The plaintiffs retained the defendant law firm, Finz & Finz, P.C. (hereinafter the firm), to represent them in the underlying medical malpractice action, which they commenced in 1997. The firm's theory of the case was that the doctors should have delivered the surviving babies immediately after learning of Sean's death, and that the delay caused Kevin's injury. Most of the defendants in the medical malpractice action obtained summary judgment dismissing the complaint insofar as asserted against them, and the one defendant who went to trial obtained a directed verdict dismissing the case. The plaintiffs' expert medical witnesses were unable to testify as to when Kevin's injury occurred, acknowledging that it could have been immediately after Sean's death. Thus, the Supreme Court held that the plaintiffs could not establish the proximate cause element of medical malpractice. This Court affirmed (see *Healy v Spector*, 287 AD2d 541 [2001]).

The plaintiffs thereafter commenced the instant action alleg-

ing legal malpractice against the firm. The firm moved for summary judgment dismissing the complaint, submitting in support the affirmations of three physicians, in which they stated that Kevin's injury was caused by Sean's death. The plaintiffs submitted the affirmation of their own expert physician in response, who stated that, although Sean's death caused Kevin's injuries, the damage would have occurred over time. They also submitted the affirmation of an attorney, who stated that the firm failed to exercise the care and skill commonly exercised by a member of the legal profession, because its attorneys failed to find an appropriate medical expert. The Supreme Court denied the firm's motion for summary judgment dismissing the complaint. We reverse.

To succeed in a legal malpractice action, a plaintiff must prove that his or her attorney failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community, and that this failure proximately caused the plaintiff to sustain damages (*see Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438, 442 [2007]; *see also Barnett v Schwartz*, 47 AD3d 197, 203 [2007]). To establish causation, a plaintiff must show that " 'but for' the [attorney's] negligence . . . [the plaintiff] would have prevailed in the underlying action . . . or would not have incurred damages" (*Barnett v Schwartz*, 47 AD3d at 203). "Expert testimony is normally needed to establish that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession" (*Northrop v Thorsen*, 46 AD3d 780, 782 [2007]).

Here, to succeed on their cause of action alleging legal malpractice, the plaintiffs must ultimately prove that, but for the firm's alleged mishandling of the medical malpractice action, they would have prevailed. "To establish a prima facie case of liability in a medical malpractice action, a plaintiff must prove (1) the standard of care in the locality where the treatment occurred, (2) that the defendant breached that standard of care, and (3) that the breach of the standard was the proximate cause of injury" (*Berger v Becker*, 272 AD2d 565, 565 [2000]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Nichols v Stamer*, 49 AD3d 832, 833 [2008]).

"Attorneys are free to select among reasonable courses of action in prosecuting clients' cases without thereby exposing themselves to liability for malpractice" (*Iocovello v Weingrad & Weingrad*, 4 AD3d 208 [2004]). Here, the firm established, prima facie, that its choice of experts in this case was a reasonable course of action, and the plaintiffs failed to raise a triable issue

of fact in opposition. The conclusory assertion of the plaintiffs' expert attorney—that the firm simply chose the wrong experts—is insufficient to sustain a cause of action alleging legal malpractice (*see Dimond v Kazmierczuk & McGrath*, 15 AD3d 526, 527 [2005]). Moreover, the affirmation of the plaintiffs' expert physician was itself conclusory and was, thus, insufficient to raise a triable issue of fact in opposition to the motion for summary judgment (*see Brady v Bisogno & Meyerson*, 32 AD3d 410 [2006]). As the firm demonstrated that it could not have proven proximate cause in the underlying medical malpractice action, and as the plaintiffs failed to raise a triable issue of fact in opposition, the Supreme Court should have granted the firm's motion for summary judgment dismissing the complaint (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

In view of the foregoing, we do not address the parties' remaining contentions. Rivera, J.P., Balkin, Leventhal and Hall, JJ., concur.