█ Lovino, Inc., Doing Business as Bodyline Collision, et al., Respondents, v Lavallee Law Offices et al., Appellants. (And a Third-Party Action.) [948 NYS2d 303]—

In an action to recover damages for legal malpractice, the defendants appeal from a judgment of the Supreme Court, Nassau County (Brown, J.), entered August 12, 2011, which, upon an order of the same court (Feinman, J.), entered October 27, 2010, denying their motion for summary judgment, upon a jury verdict, and upon an order of the same court (Brown, J.) entered August 2, 2011, inter alia, granting the plaintiffs' cross motion pursuant to CPLR 5001 (c) to specify the date from which interest is to be computed, is in favor of the plaintiffs and against them in the principal sum of $268,500, and awarded the plaintiffs $140,694 in prejudgment interest on the sum of $268,500 from August 24, 2005, until May 20, 2011.

Ordered that the judgment is affirmed, with costs.

The individual plaintiff, Joseph Indovino, owns and operates the corporate plaintiff, Lovino, Inc., doing business as Bodyline Collision (hereinafter Bodyline), an auto body repair shop. In

1994, the plaintiffs invested $295,000 with Robert Tassinari, who is a relative of Indovino. By January of 1998, after they had not received any profits, statements, receipts, or other evidence of the results of their investment with Tassinari, the plaintiffs demanded the return of their investment. Shortly thereafter, the sum of $232,500 was transferred by nonparty Frank Zangara, a person then unknown to the plaintiffs, to a Bodyline account at Chase Manhattan Bank. On April 8, 1998, Zangara appeared at the office of Bodyline, identified himself as a person who worked with Tassinari, and demanded the return of the $232,500. While Zangara was in the office, Indovino called Tassinari, who spoke with Zangara on the phone. After that conversation, Zangara told Indovino that Tassinari "agreed to take care of everything," and Zangara left the shop. That day, the plaintiffs received by facsimile a "general release" purportedly signed by Zangara.

Nearly six years later, in December 2003, Zangara and a corporation commenced an action (hereinafter the underlying action) against, among others, the plaintiffs, seeking, inter alia, damages in the sum of $232,500. The plaintiffs retained the defendants Keith Lavallee and Lavallee Law Offices (hereinafter together the Lavallee defendants) to defend them in the underlying action, and Lavallee assigned the case to his associate, the defendant Ryan Brownyard. A few days before the scheduled trial, Brownyard sought a stay in order to serve a third-party complaint on Tassinari; the application was denied, the trial proceeded, and Brownyard did not call Tassinari to testify. Zangara prevailed in the underlying action and was awarded a judgment against the plaintiffs in the principal sum of $232,500.

The plaintiffs thereafter commenced this action to recover damages for legal malpractice, alleging that the defendants had failed to adduce evidence in support of their complete defense to Zangara's action. They alleged that Tassinari had used a pretext to induce Zangara to transfer the $232,500 to the plaintiffs' account, and thereafter Tassinari satisfied Zangara's claim to those monies by transferring $250,000 to Zangara in consideration for the general release sent to the plaintiffs. The defendants failed to adduce this evidence at the trial of the underlying action and inexplicably failed to implead Tassinari or to call him as a witness, although the plaintiffs had repeatedly made such requests from the outset of the case.

"In an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the at-

torney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages" (*Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438, 442 [2007] [internal quotation marks omitted]; *see Verdi v Jacoby & Meyers, LLP*, 92 AD3d 771, 772 [2012]; *Barnett v Schwartz*, 47 AD3d 197, 203 [2007]). "To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence" (*Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d at 442). "To succeed on a motion for summary judgment, the defendant in a legal malpractice action must present evidence in admissible form establishing that the plaintiff is unable to prove at least one of these essential elements" (*Verdi v Jacoby & Meyers, LLP*, 92 AD3d at 772 [internal quotation marks omitted]).

Here, in support of their motion for summary judgment, the defendants established their prima facie entitlement to judgment as a matter of law dismissing the complaint by submitting, inter alia, Brownyard's affidavit, in which he averred that Indovino did not want to bring Tassinari into the underlying action because of their family relationship and did not request Tassinari's involvement until five days before the scheduled trial. The defendants also submitted the trial transcript in the underlying action, which included Zangara's testimony that he had received a payment of $250,000 on April 8, 1998, and Brownyard's argument in summation that the purpose of that payment was to satisfy Zangara's claim against the plaintiffs. In opposition, the plaintiffs raised triable issues of fact with evidence, including the affidavit of Indovino, in which he averred that he told the defendants from the beginning of their representation that Tassinari was the sole cause of Zangara's claim and that Tassinari had to be brought into the underlying action as a party or a witness. Indovino also averred that he had recently learned that the defendants had a potential conflict of interest due to their previous representation of Zangara in another matter. Further, the plaintiffs submitted Tassinari's affidavit, in which he stated that, had he been called as a witness in the underlying action, he would have testified that he paid $250,000 to Zangara to repay the money Zangara had transferred to the plaintiffs. In light of these triable issues of fact, the Supreme Court properly denied the defendants' motion (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

At the trial in this matter, the jury rendered a verdict in favor of the plaintiffs and determined that the plaintiffs had sustained damages in the sum of $268,500. The Supreme Court entered

judgment in favor of the plaintiffs in the principal sum of $268,500, plus $140,694 in prejudgment interest on that sum from August 24, 2005, the date of accrual of the plaintiffs' cause of action, until the jury verdict on May 20, 2011. The defendants contend that the assessment of prejudgment interest on the entire principal amount is an impermissible double recovery with respect to the portion of the damages award which represents the plaintiffs' payment of interest on a loan they were required to obtain in order to pay the judgment in the underlying action. This contention is without merit. Although the trial evidence supported such an item of damages, as the Supreme Court observed, it is improper to speculate as to the manner in which the jury reached its computation since the verdict sheet did not require the jury to itemize damages. In any event, prejudgment interest awarded on such an amount does not constitute a double recovery, since the "award of interest is founded on the theory that there has been a deprivation of use of money or its equivalent" (*Kaiser v Fishman*, 187 AD2d 623, 627 [1992]; *see Wolf v American Tech. Ceramics Corp.*, 84 AD3d 1224, 1226 [2011]). Here, the plaintiffs were deprived of the use of any money they were required to expend to make interest payments on a loan.

The defendants' remaining contention, that prejudgment interest should not have been awarded for the entire time period with respect to certain expenses the plaintiffs allegedly incurred at various times after August 24, 2005, is based on pure speculation, and therefore, is without merit (*cf.* CPLR 5001 [b]; *Barnett v Schwartz*, 47 AD3d at 208). Angiolillo, J.P., Eng, Lott and Austin, JJ., concur.