[896 NYS2d 805]

BAKER, SANDERS, BARSHAY, GROSSMAN, FASS, MUHLSTOCK & NEU-
WIRTH, LLC, Plaintiff, v COMPREHENSIVE MENTAL ASSESS-
MENT & MEDICAL CARE, P.C., et al., Defendants.

Supreme Court, Nassau County, January 8, 2010

**APPEARANCES OF COUNSEL**

*Matthew J. Conroy & Associates, P.C.*, Garden City (*Matthew J. Conroy* of counsel), for plaintiff. *Law Office of Roman V. Popik, P.C.*, New York City (*Roman V. Popik* of counsel), for Comprehensive Mental Assessment & Medical Care, P.C., and others, defendants. *Lubarsky & Tarnovsky, P.C.*, Brooklyn, for Lubarsky & Tarnovsky, P.C., defendant.

**OPINION OF THE COURT**

IRA B. WARSHAWSKY, J.

On or about October 1, 2007, Comprehensive Mental Assessment & Medical Care, P.C. (Comp Mental) commenced an action against Baker, Sanders, Barshay, Grossman, Fass, Muhlstock &

Neuwirth, LLC (Baker Sanders) in the Supreme Court of the State of New York, County of Kings, for conversion, breach of contract, and ancillary damages (Kings County action). In or about November 20, 2007, Baker Sanders commenced an action in the Supreme Court of the State of New York, County of Nassau, against Comp Mental, All Mental Care Medicine, P.C. (All Mental), Points of Health Acupuncture, P.C. (Points of Health), Horizon Psychological Services, P.C. (Horizon), Art of Healing Medicine, P.C. (Art of Healing), and Lubarsky & Tarnovsky, P.C. (Lubarsky) for, among other things, a declaratory judgment, breach of contract, quantum merit, retaining lien and tortious interference with contract (Nassau County action) (collectively, Comp Mental, All Mental, Points of Health, Horizon and Art of Healing are known as the Pincusovich defendants).

In or about March 12, 2008, Baker Sanders filed an amended verified complaint against the Pincusovich defendants and Lubarsky. In an order dated February 29, 2008, the Honorable Stephen A. Bucaria in the Nassau County action issued a short form order which decided a motion by Baker Sanders pursuant to CPLR 602 (a) and (b) to consolidate the Nassau County action with the Kings County action. Justice Bucaria further decided that the causes of action set forth in the Kings County action shall be deemed counterclaims in the Nassau County action which shall be captioned *Baker, Sanders, Barshay, Grossman, Fass, Muhlstock & Neuwirth, LLC v Comprehensive Mental Assessment & Med. Care, P.C., All Mental Care Medicine, P.C., Points of Health Acupuncture, P.C., Horizon Psychological Servs., P.C., Art of Healing Medicine, P.C., and Lubarsky & Tarnovsky, P.C.* An amended answer with counterclaims was filed on March 31, 2009, which included a legal malpractice claim. Sometime thereafter, the Nassau County action was transferred to this court.

As a result of numerous and ongoing discovery disputes between plaintiff and defendants, on July 23, 2009 Michael Cardello, Esq. was appointed Discovery Referee to oversee all discovery in the Nassau County action. On or about September 18, 2009, a discovery-related conference was held during which counsel for the parties and the Discovery Referee addressed numerous outstanding discovery issues. While a resolution to numerous discovery-related issues was reached, there was one particular issue that required briefs to be submitted to the Discovery Referee for a determination. That issue involves Baker Sanders' supplemental notice of discovery and inspection dated September 5, 2008, which requested numerous documents related to the corporate structure of the Pincusovich defendants

(the supplemental demands). Specifically, the supplemental demands sought the following: (1) for the period January 2001 through the present, originals, if available, and if not, copies of any and all general ledgers maintained for each defendant; (2) for the period of January 2001 through the present, copies of any and all corporate, federal and state tax returns for each defendant; (3) for the period of January 2001 through the present, originals, or if no originals are available, copies of all bank statements used in connection with the operation of the defendants' businesses; (4) for the period of January 2001 through the present, copies of all 1099s or W-2s issued to all employees of, or persons or entities providing services to the defendants; (5) for the period of January 2001 through the present, copies of all lease agreements between the defendants and any other person or entities relating to space utilized by the defendants in the operation of their businesses; and (6) for the period of January 2001 through the present, copies of all management agreements between the defendants and any other person or entities relating to the operation of their businesses.

Counsel for the Pincusovich defendants has indicated that the documentation sought in the supplemental demands is a tactic to divert the focus of the litigation away from the real issues and bury the Pincusovich defendants in meaningless, irrelevant and protracted discovery. Because counsel for Baker Sanders and the Pincusovich defendants could not reach a resolution on this issue, the Discovery Referee directed counsel to submit briefs on the issue.

Thereafter, counsel for Baker Sanders and the Pincusovich defendants entered into a briefing schedule. As such, Baker Sanders served and filed a memorandum of law in support with the Discovery Referee which was followed by the Pincusovich defendants filing and serving their memorandum of law in opposition and which was then followed by the plaintiff's reply. During a court conference held on November 19, 2009, counsel for the Pincusovich defendants sought leave of the court to file a surreply with regard to the outstanding discovery issue. The application was granted by the court. However, counsel for Baker Sanders was permitted to file and serve a supplemental reply in response to the surreply.

Although Michael Cardello, Esq. has been appointed to mediate discovery issues in this case, the court has determined that a formal decision of the court is warranted. Having considered all the submissions of the parties and having reviewed the supplemental demands, the court decides the issue as set forth below.

## Discussion

### Baker Sanders' Arguments

Baker Sanders contends that it is entitled to disclosure of the requested documentation in the supplemental demands because it, as a legal malpractice defendant, is entitled to defend the claim by challenging the merits of the underlying action. Baker Sanders argues that in an action to recover damages for legal malpractice, a legal malpractice plaintiff must demonstrate that an attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused the legal malpractice plaintiff to sustain actual and ascertainable damages. Baker Sanders goes on to state that to establish causation, a legal malpractice plaintiff must show that he or she would have prevailed in the underlying action or would have not incurred any damages but for the lawyer's negligence. Therefore, Baker Sanders argues that it is well settled that a legal malpractice defendant can raise the merits of the legal malpractice plaintiff's underlying action.

### *Mallela* Defense[1]

Baker Sanders contends that the *Mallela* defense is a complete defense to the Pincusovich defendants' counterclaim for legal malpractice. (*See State Farm Mut. Auto. Ins. Co. v Mallela*, 4 NY3d 313 [2005].) According to Baker Sanders, the holding in *Mallela* allows an insurance carrier to look beyond the facially valid professional corporation's structure to determine whether a corporation is owned or controlled by a nonlicensed person.

In the instant matter, the Pincusovich defendants are New York professional corporations which engaged Baker Sanders to bring no-fault claims against various insurance companies for unpaid no-fault insurance claims pursuant to the New York Comprehensive Motor Vehicle Insurance Reparations Act (the No-Fault Law).

According to Baker Sanders, the No-Fault Law specifies that "a provider of healthcare services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York." Baker Sanders also states that in a notice published prior to the effective date of the regulations, the Department of

---

1. The *Mallela* defense is a reference to a holding in *State Farm Mut. Auto. Ins. Co. v Mallela* (4 NY3d 313 [2005]).

Insurance stated that the above-stated language has been added to clarify that a health care provider must be properly licensed to be eligible for reimbursement under the No-Fault Law. Furthermore, New York's Business Corporation Law requires professional health care service corporations to be owned and controlled only by individuals who are licensed to practice medicine.

Therefore, it is Baker Sanders' contention that it should be entitled to review documentation that goes to the issue of whether there is a fraudulent corporate structure for the Pincusovich defendants. Baker Sanders argues that if it could show that the Pincusovich defendants were never entitled to no-fault recovery of monies because of their fraudulent corporate structure then there can be no basis for a legal malpractice claim against Baker Sanders. Therefore, the documentation requested in the supplemental demands is material and necessary to the defense of the legal malpractice claim.

The Independent Contractor Defense

Baker Sanders also sets forth in its moving papers an independent contractor defense to the claim of legal malpractice. According to Baker Sanders, 11 NYCRR 65-3.11 (a) provides that "[a]n insurer shall pay benefits for any elements of loss directly to the applicant or, upon assignment by the applicant, shall pay benefits directly to the provider of healthcare services." However, Baker Sanders contends that an opinion letter dated February 21, 2001 from the Department of Insurance states that a health care provider is not permitted to seek reimbursement for services provided by independent contractors. Baker Sanders argues that a claim for health care services sued for by a professional corporation which are rendered by an independent contractor must be dismissed. Baker Sanders cites several cases to support that proposition.

Although not expressly stated in its papers, Baker Sanders asserts that the Pincusovich defendants provided health care services through independent contractors and, therefore, are not entitled to no-fault benefits. According to Baker Sanders, there could be no legal malpractice claim set forth against Baker Sanders.

The Requested Documentation in the Supplemental Demands is Both Necessary and Material

Baker Sanders asserts that the documentation requested in the supplemental demands is material and necessary to the defense of the legal malpractice claim. Baker Sanders states

that the factual issue in question is whether the professional corporations in question are actually owned and controlled by Dr. Pincusovich or whether Nick Minkin or a management company has exerted ownership and control of the professional corporations in violation of the General Business Law. Baker Sanders asserts that the financial information and management documents requested speak directly to the issue of ownership and control. In support of its position that the requested documents were both necessary and material, Baker Sanders cites several cases including *One Beacon Ins. Group, LLC v Midland Med. Care, P.C.* (54 AD3d 738 [2d Dept 2008]), which affirmed a lower court's decision granting plaintiffs' cross motion for the production of certain financial documents to allow plaintiffs to determine if the medical provider was actually controlled by a management company owned by unlicensed individuals in violation of the Business Corporation Law.

## Pincusovich Defendants' Memorandum of Law in Opposition to Plaintiff's Supplemental Demands

The Pincusovich defendants argue that the issues to be decided are: (1) whether the plaintiff Baker Sanders can now question the validity of all the Pincusovich defendants' claims submitted for payment to insurance companies as its defense to a claim for legal malpractice; and (2) whether the supplemental demands constitute "material and necessary" disclosure for preparation of a defense against the claim for legal malpractice.

## The Pincusovich Defendants' Arguments Regarding the Attorney Malpractice Claim

The Pincusovich defendants cite several cases stating the standard for attorney malpractice in the State of New York and argue that there is nothing in the long line of cases about "stepping into the shoes" of a client's adversary. The Pincusovich defendants further contend that under the relevant case law regarding legal malpractice, there is a distinction between a client's burden to prove viability of its case and an attorney's attempt to "play for another side."

In addition, the Pincusovich defendants state that Baker Sanders neglected to inform the court that the *Mallela* defense is available only to insurance carriers as a statutory defense arising out of a claimant's failure to comply with applicable sections of the Business Corporation Law, Limited Liability Company Law and Education Law and that there are no reported cases where such a defense against a claim for legal malpractice was deemed valid by a court.

### *Mallela* Defense is Not Appropriate Since Plaintiffs Lack "Founded Belief"

The Pincusovich defendants cite several cases in support of their position that *"founded belief"* is necessary in order to sustain a *Mallela* defense and that Baker Sanders has not offered any credible proof which may form a "founded belief" to sustain such a defense. The Pincusovich defendants state that indisputable facts reveal that Baker Sanders actively solicited the Pincusovich defendants' business and never questioned their corporate structure. The Pincusovich defendants state that it is clear that Baker Sanders' request for documents is nothing more than a desperate attempt to shift the focus of this litigation.

### Scope of Discovery

The Pincusovich defendants argue that the supplemental demands will not assist plaintiff Baker Sanders in its defense against the claim for legal malpractice. The Pincusovich defendants contend that there is no plausible explanation as to how the supplemental demands will enable Baker Sanders to rebut a legal malpractice claim (unless the *Mallela* defense is countenanced by the court). Counsel for the Pincusovich defendants state that any experienced attorney will quickly determine that the supplemental demands are nothing short of a fishing expedition and that, if permitted, will open a floodgate of baseless inquiries into every expense and disbursement.

The Pincusovich defendants cite the CPLR and several cases with regard to discovery standards, specifically stating that while disclosure provisions of the CPLR are ordinarily construed liberally, the scope of permissible discovery is not unlimited and that the trial court is vested with broad discretion to determine what is material and necessary. The Pincusovich defendants, based on case law, contend that the Baker Sanders' supplemental demands are useless and meaningless for the issues in the case.

### Baker Sanders' Reply Memorandum of Law

### Is a Legal Malpractice Defendant Entitled to Defend the Action by Challenging the Merits of the Underlying Action?

Baker Sanders argues that the Pincusovich defendants are ignoring basic tenets of legal malpractice law in New York State, in that it is well settled that in a malpractice action a judge or jury must decide a "case within a case" and determine what the results would have been absent the alleged malpractice. As stated in its moving papers, to establish the elements

of proximate cause and actual damages, a legal malpractice plaintiff must meet a case within a case requirement demonstrating that but for the attorney's conduct, the client would have prevailed in the underlying matter or would not have sustained any damages.

According to Baker Sanders, a plaintiff in a legal malpractice action must prove a case within a case, but it is only after the plaintiff establishes that he would have recovered a favorable judgment in the underlying action that he can proceed with proof that the attorney engaged to represent him in the underlying action was negligent in handling the action and that the attorney's negligence was the proximate cause of the plaintiff's loss.

Baker Sanders further argues that since the defense of fraudulent incorporation is a complete defense to a claim for no-fault benefits, one that is not subject to the rules of preclusion, the bar against which to measure whether a defendant has shown that its discovery request on the issue of fraudulent incorporation is material and necessary is quite low. Baker Sanders further contends that article 31 of the CPLR governs discovery actions before the Civil Court and its disclosure provisions simply do not condition discovery upon a showing of good cause. Baker Sanders also distinguishes two cases that were cited by the Pincusovich defendants for the proposition that founded belief was necessary to sustain the *Mallela* defense. According to Baker Sanders, there is nothing in the cases that would demonstrate that founded belief is necessary for disclosure. In fact, Baker Sanders states that with regard to the actual categories of documents requested, beyond the obvious relevance of these documents in showing that the professional corporations were owned or controlled by a layperson, these same specific documents were deemed to be properly discoverable by the United States District Court in *State Farm Mut. Auto. Ins. Co. v CPT Med. Servs., Inc.*[2] Therefore, according to Baker Sanders, it is entitled to disclosure of those six categories of documents.

### The Pincusovich Defendants' Surreply

According to the surreply (as defined below), counsel for the Pincusovich defendants recently discovered two documents

---

**2.** Counsel for Baker Sanders cites *State Farm v CPT Med. Servs.* as 2004 US Dist Ct Pleadings 5045. However, there are at least seven reported decisions on the *State Farm v CPT Med. Servs.* matter. After a review by this court, it is assumed that the proper citation is 2006 WL 2460641, 2006 US Dist LEXIS 59497 (ED NY 2006).

which "undress Plaintiff's motion as an arrogant attempt to divert the focus of this lawsuit and, specifically, the Defendants' counterclaims." (*See* affirmation in further opposition to plaintiff's motion of Roman V. Popik, Esq., dated Nov. 23, 2009, at 2 [the surreply].) The Pincusovich defendants argue that the *Mallela* defense ceased to exist as of September 2006, the date when several insurance carriers and plaintiff Baker Sanders, on behalf of the medical providers, entered into a Bulk Settlement Agreement.

According to counsel for the Pincusovich defendants, paragraph 11 of the Bulk Settlement Agreement states, in pertinent part, that

> "[t]he insurers individually and collectively release the Providers in each their respective past, present and future shareholders, practioners, attorneys, affiliates, parent corporations, subsidiaries officers and directors, successors, administrators and assigns (collectively the 'Providers Releasees') from any and all legal, equitable, administrative and/or other claims, counter-claims, demands, setoffs, defenses, accounts, suits, debts, dues, actions, causes of action, proceedings, arbitrations, damages, executions, judgments, findings, controversies and disputes, whether known or unknown or suspected or unsuspected, which against the Provider Releasees, any and/or all of the Insurers ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, whether known or unknown, suspected or unsuspected."

Counsel for the Pincusovich defendants argue that since "even a possibility of raising such a defense [the *Mallela* defense] was specifically foreclosed and waived by the only party which was in a position to examine propriety of Pincusovich Defendants' corporate structure prior to commencement of this lawsuit, Plaintiff [Baker Sanders] cannot revive it at its discretion." (*See* surreply at 7.) The Pincusovich defendants contend that there is "no basis in law or in fact to allow Plaintiff to carve out an exception to this waiver and release." (*Id.*)

The next document that the Pincusovich defendants put forth before this court is a copy of an interview of Robert Baker and Mark Grossman, two named partners of the plaintiff Baker Sanders, by Fortune magazine in December of 2003 in connection with no-fault fraud and abuses perpetrated by some medical providers and attorneys.

The quote from the article that counsel for the Pincusovich defendants believes is important states "the insurance companies haven't given us any evidence these claims are fraudulent. Would you want me to represent you if I just walked away?"

Counsel for the Pincusovich defendants contends that after

> "making loud statements of the Defendants' [Pincusovich Defendants] integrity and having made a 'small? fortune off the [Pincusovich] Defendants claims for a number of years and signing off on release documents, it is disingenuous and, even improper, for Plaintiff to pursue this frivolous and dilatory demand for voluminous documents to examine Pincusovich Defendants' corporate and financial affairs from 2001 up to date."

### Baker Sanders' Response to Surreply

As mentioned above, the court granted plaintiff's counsel an opportunity to respond to the surreply served by counsel for the Pincusovich defendants. In the response, Baker Sanders contends that the documents set forth in the surreply, i.e., the Bulk Settlement Agreement between three insurance companies and the plaintiff Baker Sanders and a Fortune magazine on-line news article from 2003, are completely irrelevant and immaterial to the issues pending before the court. Baker Sanders argues that the Pincusovich defendants' claim that the plaintiff "is now barred from raising the *Mallela* Defense because it was waived in a [Bulk] Settlement agreement borders on frivolity and speciousness." (*See* affirmation in further support by Matthew J. Conroy, dated Nov. 30, 2009, at 2 [the response].) The plaintiff states that any mutual release between the carrier and the plaintiff has no bearing on the viability of the claims or the defenses prior to settlement. Counsel for Baker Sanders contends that the inquiry is not whether defenses are available today, but rather whether they were available at the time of the underlying litigation.

Baker Sanders also argues that the on-line article which was annexed to the surreply hardly merits discussion other than to state it has no bearing on any issues in this case. Counsel for Baker Sanders states that the highlighted portion of the article simply quotes a representative of an insurance carrier claiming that no-fault firms are the engines of fraud and a quote from Robert Baker refuting the statement. According to Baker Sanders, this is not material to the issues in the case that is before the court, and therefore, the article should be disregarded.

## Law Regarding Disclosure

Section 3101 (a) of the Civil Practice Law and Rules directs that there shall be "full disclosure of all matter material and necessary in the prosecution or defense of an action." The words "material and necessary" are, in our view, to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968].) In determining whether disclosure is appropriate, "[t]he test is one of usefulness and reason." (*Id.*) The Court of Appeals in *Allen* held that "CPLR 3101 (subd. [a]) should be construed, as the leading text on practice puts it, to permit discovery of testimony which is sufficiently related to the issues in litigation to make the effort to obtain it in preparation of trial reasonable." (*Id.* at 406-407 [internal quotation marks omitted], quoting 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.07, at 31-13.)

However, "unlimited disclosure is not required." (*Beckles v Kingsbrook Jewish Med. Ctr.*, 36 AD3d 733, 733 [2d Dept 2007], quoting *Smith v Moore*, 31 AD3d 628, 628 [2d Dept 2006].) While the "material and necessary" standard set forth in CPLR 3101 (a) is to be liberally construed, "this does not mean that litigants have carte blache to demand production of whatever documents they speculate might contain something helpful." (*Vyas v Campbell*, 4 AD3d 417, 418 [2d Dept 2004].) "It is incumbent on the party seeking disclosure to demonstrate that the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims." (*Id.*; *Crazytown Furniture v Brooklyn Union Gas Co.*, 150 AD2d 420, 421 [2d Dept 1989]; *see Acosta v Hadjigavriel*, 6 AD3d 636 [2d Dept 2004].) Moreover, supervision of the disclosure is generally left to the trial court's broad discretion. (*Blagrove v Cox*, 294 AD2d 526 [2d Dept 2002].) The issue for this court to decide is whether the documents demanded in the supplemental demands by plaintiff Baker Sanders are material and necessary to the defense of the counterclaim for legal malpractice.

## Law Regarding Malpractice

In a legal malpractice action, the plaintiff must show that an attorney "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." (*McCoy v Feinman*, 99 NY2d 295, 301 [2002], quoting

*Darby & Darby v VSI Intl.*, 95 NY2d 308, 313 [2000].) In addition, the plaintiff must show that the attorney's breach of this professional duty caused the plaintiff's actual damages. (*See McCoy, supra; see also Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 170 AD2d 108, 114 [1st Dept 1991], *affd* 80 NY2d 377 [1992].)

The elements to be proved in a legal malpractice action have been subject to various formulations. (*See Barnett v Schwartz*, 47 AD3d 197 [2d Dept 2007].) Thus while it is clear that a plaintiff client must prove negligence, i.e., that the defendant attorney failed to exercise the degree of care, skill and diligence commonly possessed and exercised by members of the legal community, some cases hold that the negligence must be "the" proximate cause of damages (*see Britt v Legal Aid Socy.*, 95 NY2d 443, 446 [2000]; *see e.g. Kleeman v Rheingold*, 81 NY2d 270 [1993]; *Caruso, Caruso & Branda, P.C. v Hirsch*, 41 AD3d 407 [2d Dept 2007]; *Cohen v Wallace & Minchenberg*, 39 AD3d 691 [2d Dept 2007]; *Cummings v Donovan*, 36 AD3d 648 [2d Dept 2007]; *Kotzian v McCarthy*, 36 AD3d 863 [2d Dept 2007]), while others hold that there must be "a" proximate cause of damages. (*Bauza v Livington*, 40 AD3d 791, 793 [2d Dept 2007]; *see e.g. Moran v McCarthy, Safrath & Carbone, P.C.*, 31 AD3d 725 [2d Dept 2006]; *Terio v Spodek*, 25 AD3d 781 [2d Dept 2006]; *Pistilli v Gandin*, 10 AD3d 353 [2d Dept 2004].) There are also cases from the Appellate Division, Second Department, requiring the damages to be a "direct result" of negligence. (*See Caruso, Caruso & Branda, P.C. v Hirsch*, 41 AD3d 407, 409 [2007]; *Kotzian v McCarthy*, 36 AD3d 863 [2007]; *Moran v McCarthy, Safrath & Carbone, P.C.*, 31 AD3d 725 [2006].)

However, the most recent cases from the Court of Appeals do not expressly require that negligence be either "the" or "a" proximate cause of damages but require proof that "but for" the negligence of a defendant attorney, the plaintiff client would have prevailed in the underlying suit (in a classic lawsuit within a lawsuit scenario) or would not have incurred damages (in an action alleging negligent advise, etc.). (*Barnett v Schwartz*, 47 AD3d 197 [2007]; *see e.g. Leder v Spiegel*, 9 NY3d 836 [2007]; *Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438 [2007]; *AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428 [2007]; *Davis v Klein*, 88 NY2d 1008 [1996]; *Carmel v Lunney*, 70 NY2d 169 [1987].) Therefore, to establish causation, plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages but for the

lawyers' negligence. (*Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438 [2007]; *see also Davis v Klein*, 88 NY2d 1008, 1009-1010 [1996]; *Carmel v Lunney*, 70 NY2d 169 [1987].) Thus, in order for the Pincusovich defendants to prevail in their counterclaim for legal malpractice, they must satisfy the elements for legal malpractice. However, if the Pincusovich defendants cannot prove that they would have prevailed in the underlying action, any negligence would not be the proximate cause of any damages. Therefore, the Pincusovich defendants must show that they would have prevailed in the underlying actions in a classic "lawsuit within a lawsuit" scenario.

New York State's No-Fault Regulations

Under New York State's Comprehensive Motor Vehicle Insurance Reparations Act, i.e., the No-Fault Law, automobile insurers are obligated to indemnify their insureds for, inter alia, reasonable and necessary medical services for injuries sustained by occupants of their insured covered motor vehicles that arise from the use or operation of those motor vehicles. (*See* Insurance Law § 5101 *et seq*.) Specifically, insurance carriers are required to reimburse a covered person for basic economic loss on account of personal injury arising out of the use or operation of the covered motor vehicle where basic economic loss is defined to include all necessary expenses incurred for (i) medical, hospital (including services rendered in compliance with article 41 of the Public Health Law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, X-ray, prescription drug and prosthetic services, (ii) psychiatric, physical and occupational therapy and rehabilitation, (iii) any nonmedical remedial care and treatment rendered in accordance with their religious method of healing recognized by the laws of the State and (iv) any other professional health services (*see* Insurance Law § 5102 [a] [1]). The Superintendent of Insurance has issued regulations that interpret and implement the No-Fault Law.

The no-fault regulations have been substantially revised effective September 1, 2001. (*See* 11 NYCRR 65-1.1 *et seq*.) The regulations provide that if a health care provider receives an assignment of benefits from a covered person who is treated by that provider, the covered person's insurer shall pay the provider of services directly. The regulations limit the term "any other professional health services," as used in the No-Fault Law, to those services that were required or would be required to be licensed by the State of New York if performed within the State of New

York and are necessary for the treatment of injuries sustained within the lawful scope of the licensees' practice. The regulations specify that a provider of health care services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such services in New York (11 NYCRR 65-3.16 [a] [12]). In a notice published prior to the effective date of the regulations, namely May 9, 2001, the Department of Insurance stated that this language has been added to clarify that a health care provider must be properly licensed to be eligible for reimbursement under the No-Fault Law. Moreover, distinct from the No-Fault Law is the New York State Business Corporation Law which requires professional health service corporations to be owned and controlled only by individuals who are licensed to practice medicine.

## The *Mallela* Defense

Baker Sanders' argument for the disclosure of the requested documentation is that if it can show that the Pincusovich defendants were fraudulently incorporated, i.e., medical professional corporations not owned and controlled by a licensed medical doctor, the Pincusovich defendants cannot sustain their counterclaim for legal malpractice as they could not satisfy the "but for" test. The issue was dealt with in the seminal case *State Farm Mut. Auto. Ins. Co. v Mallela* (4 NY3d 313 [2005]) by the New York State Court of Appeals. In *Mallela*, the United States Court of Appeals for the Second Circuit certified a question that asked the New York State Court of Appeals whether under the New York State No-Fault Law and implementing regulations, insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned their claims. The New York State Court of Appeals concluded that they may.

In *Mallela*, the facts are as follows: State Farm filed a complaint in the United States District Court for the Eastern District of New York seeking a judgment declaring that it need not reimburse defendants, fraudulently incorporated medical corporations, for assigned claims submitted under the No-Fault Law. The complaint sought equitable relief and damages against defendant companies and individuals for unjust enrichment and fraud. State Farm alleged, in essence, that to obtain payments from the carriers under the requirements of no-fault insurance, the defendants willfully evaded New York law prohibiting non-

physicians from sharing ownership in medical service corporations. (*See Mallela* at 319.)

According to the complaint in *Mallela*, the unlicensed defendants "paid physicians to use their names on paperwork filed with the State [of New York] to establish medical service corporations." (*Id.*) "Once the medical service corporations were established under the facially valid cover of the nominal physician-owners, the nonphysicians actually operated the companies." (*Id.*) "To maintain the appearance that the physicians owned the entities, the nonphysicians caused the corporations to hire management companies (owned by the nonphysicians), which billed the medical corporations inflated rates for routine services." (*Id.* at 319-320.) As a result, "the actual profits did not go to the nominal owners but where channeled to the nonphysicians who owned the management companies." (*Id.* at 320.)

The United States District Court "dismissed State Farm's complaint, holding that defendants' noncompliance with the licensing and incorporation statutes did not extinguish State Farm's duty to pay, so long as the actual providers acted within the scope of their licenses in rendering care." (*Id.*) On appeal,

> "[t]he Second Circuit . . . certified [to the Court of Appeals of the State of New York] the question whether
>
> " 'a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Educational Law § 6507 (4) (c) [is] entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 *et seq.*, and its implementing regulations, for medical services rendered by licensed medical practitioners.' " (*Id.*)

The New York Court of Appeals accepted the certification and held that such corporations are not entitled to reimbursement.

The Court held that the Superintendent of Insurance's "regulation allowing carriers to withhold reimbursement from fraudulently licensed medical corporations governs this case. We hold that on the strength of this regulation, carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law." (*Mallela* at 321.)

However, the Court was clear that the regulatory scheme set up by the State of New York "does not permit abuse of the truth-seeking opportunity that 11 NYCRR 65-3.16 (a) (12)

authorizes." (*Id*. at 322.) Indeed, the Superintendent's regulations themselves provide for agency oversight of carriers and demand that carriers delay the payment of claims to pursue investigations solely for good cause. (*Id*.) Therefore, a medical corporation that was fraudulently incorporated under the New York Business Corporation Law and the New York Education Law is not entitled to reimbursement by insurers.

The Independent Contractor Defense

Baker Sanders also asserts an independent contractor defense. Baker Sanders contends that if it could prove that the medical providers were seeking reimbursement for services provided by independent contractors, not employees, then the Pincusovich defendants could not sustain their claim for legal malpractice.

Where a billing provider seeks to recover no-fault benefits for services which were not rendered by it or its employees, but rather by a treating provider who is an independent contractor, it is not a "provider" of the medical services rendered within the meaning of Insurance Department Regulations (11 NYCRR) § 65-3.11 (a), and is, therefore, not entitled to recover "direct payment" of assigned no-fault benefits from the defendant insurer. (*See Health & Endurance Med., P.C. v Liberty Mut. Ins. Co.*, 19 Misc 3d 137[A], 2008 NY Slip Op 50864[U] [App Term, 2d Dept 2008]; *see also Craig Antell, D.O., P.C. v New York Cent. Mut. Fire Ins. Co.*, 11 Misc 3d 137[A], 2006 NY Slip Op 50521[U] [App Term, 1st Dept 2006].)

The Documents Requested in the Supplemental Demands are Necessary and Material

As stated earlier, Baker Sanders requested numerous categories of documentation from January 2001 through the present to assist in the defense of the claim of legal malpractice. Specifically, Baker Sanders seeks tax returns, general ledgers, bank records, management agreements, lease agreements and payroll information with regard to the Pincusovich defendants to determine whether they have been fraudulently incorporated and whether independent contractors performed medical services.

In a case with similar facts, *One Beacon Ins. Group, LLC v Midland Med. Care, P.C.* (54 AD3d 738 [2008]), the court affirmed the lower court's decision to grant that branch of the plaintiffs' cross motion which was for disclosure of certain financial documents holding that the plaintiffs were not required to make a showing of good cause for such disclosure as the documents were material and necessary in the prosecution

of the action. (*See One Beacon Ins. Group* at 740.) In *One Beacon*, the plaintiffs commenced an action against numerous professional medical service corporations, management companies, individuals who owned them, and licensed health care professionals alleging that the P.C.s were fraudulently incorporated in names of licensed healthcare professionals while, in fact, the P.C.s were owned, operated and controlled by unlicensed persons and their management companies in violation of applicable statutes and regulations. (*Id.* at 739.) The plaintiffs, inter alia, sought repayment of no-fault claims already paid to the P.C.s and a judgment declaring they were not obligated to pay outstanding claims. (*Id.*) The court held that the regulation, which permits carriers to withhold reimbursement from fraudulently licensed medical corporations to which patients have assigned their claims, allows carriers to look beyond the face of licensing documents to identify willful and material failure to abide by state and local laws. (*Id.* at 740.)

██ ██ As in *One Beacon*, Baker Sanders seeks financial information with regard to whether the Pincusovich defendants are owned and/or controlled exclusively by Dr. Pincusovich or if a management company has ownership and/or exerts control over the professional corporations. It is the view of this court that the six categories of documents, i.e., general ledgers, corporate, federal and state tax returns, bank statements, 1099s and/or W-2s, lease agreements, and all management agreements are necessary and material to determine whether the Pincusovich defendants are fraudulently incorporated. The requested documentation will permit Baker Sanders to delve into the true ownership and/or control of the Pincusovich defendants.

The precedent established in *Mallela* permits Baker Sanders to look beyond the face of the licensing documents to determine if the Pincusovich defendants are truly owned by a licensed medical doctor in compliance with New York State laws. It is the view of the court that the documentation is material and necessary because if Baker Sanders can prove that the Pincusovich defendants were fraudulently incorporated and/or that the medical services were provided by independent contractors, Baker Sanders may have a defense to the claim of legal malpractice.

### Baker Sanders Has Not Waived Its Rights

██ Notwithstanding the Pincusovich defendants' argument to the contrary, it is the view of the court that Baker Sanders has not waived its right to assert the *Mallela* defense. This

court is in agreement with counsel for the plaintiff in that the inquiry is not whether certain defenses are available today, i.e., after the execution of the release, but rather whether the defenses were available during the underlying litigation. As discussed supra, Baker Sanders should be permitted to defend the case within a case scenario, and thus, the requested documentation is material and necessary.

The court is troubled by the possibility that plaintiff law firm knew or believed that its client was unlawfully collecting benefits under the No-Fault Law when it assisted in said collection efforts. However, the impact of that "fact" on the malpractice case, or even the main action, will be determined at a later time.

Accordingly, the Pincusovich defendants are directed to respond to the supplemental demands dated September 5, 2008 within 35 days of the date of this order.